### KYSER v. MacADAM et al.
### No. 59.

Circuit Court of Appeals, Second Circuit.

Jan. 13, 1941.

---

[1] Union Producing Company v. Pardue.

[2] Union Producing Company v. Emma Driskell.

Henry T. Dorrance, of Utica, N. Y. (Edward T. Wilber, of Syracuse, N. Y., and Ferris, Burgess, Hughes & Dorrance, of Utica, N. Y., on the brief), for appellant.

Ralph Shulman, of Syracuse, N. Y., for appellees Alexander L. MacAdam and Frances' MacAdam.

Victor Levine, of Syracuse, N. Y. (T. Aaron Levy, of Syracuse, N. Y., on the brief), for appellee Abraham Rubenstein.

Before L. HAND, SWAN, and CLARK, Circuit Judges.

CLARK, Circuit Judge.

On or about February 2, 1938, Alexander and Frances MacAdam, husband and wife, filed a petition under former § 74 of the Bankruptcy Act, 11 U.S.C.A. § 202, for a composition or extension of their debts. The Chandler Act became effective while this proceeding was pending; so on October 17, 1938, they filed a petition under Chapter XII of that Act, 11 U.S.C.A. § 801 et seq., for a real property arrangement. These petitions disclosed their inability to pay their debts, and as their substantial asset, a three-family house scheduled at a value of $6,000. The proceedings eventually led to the confirmation of a plan of arrangement which is under attack in this appeal.

The bone of contention here is a remodeled house in Syracuse, the casus belli its remodeling in 1937 from a two-to a three-family dwelling, with the astonishing result that its value after being "improved" was, as the referee found, some $2,000 less than the cost of the alterations alone. The work was actually completed by the trustee appointed in these proceedings. A plan to be effective had then to make provision for the cost of such completion, the claims secured by mechanics' liens for the work previously done, expenses of administration, and the principal and interest due on a $1,500 mortgage held by one Abraham Rubenstein and adjudged by the referee a prior lien on the premises. Obviously heroic measures were needed. Nor did the referee shrink from the task before him. The plan which he approved reduced each lienor's claim to apparently less than half its former amount; the balance, termed "unsecured," was actually to be wiped out except for a nominal payment of 1 per cent in quarterly installments over a year. The plan then provided, through a new first mortgage and a second mortgage, for funds to pay the immediate costs due, the Rubenstein mortgage, and a small amount on the secured claims as reduced, together with the debtors' unsecured promise to pay the balance of such claims—apparently about $2,000—in quarterly installments over a ten-year period. Thus the debtors would receive their house free and clear of their old claims, subject only to new mortgages amounting to $4,000. The lienors, on appellant's estimate, would lose over 51 per cent of their claims and receive only 10 per cent in cash now; though on appellee debtors' estimate they would eventually receive up to nearly 64 per cent of their claims.

The difference in estimates just noted comes from the fact that appellees take no note of expenses of administration, which have not yet been fixed, and say the debtors are to pay the trustee's costs of completing the work, though how is not shown. The record does not enlighten us here; on these and other important issues it has important lacunae. The referee's findings are of the scantiest nature; and there is no memorandum of decision, either of the referee or of the court below. On some few matters the

briefs show agreement. Thus the parties agree that the referee's final valuation of the house was $6,190, though the record shows only his earlier figure of $4,500 before the alterations were completed. No final approval of this novel arrangement could be ventured on so inadequate a record. But we do not come to that question, because we think that the referee's orders were erroneous as a matter of law.

The appellant, Frank N. Kyser, is a creditor who had supplied lumber for the improvements and who duly filed his mechanic's lien (apparently about November 22, 1937) and thereafter started an action to foreclose it, which the referee ordered dismissed. Kyser sought and obtained below review of four of the referee's orders in the proceedings: one of September 29, 1938, holding the Rubenstein mortgage a valid lien prior to claims of mechanics' lienors; one of January 21, 1939, fixing the value of the real estate, classifying the claims of creditors, and establishing the value of secured claims other than the Rubenstein mortgage; another of the same date confirming the arrangement; and a final one of June 21, 1939, directing the consummation of the arrangement through the new mortgages and the release by the secured creditors of their liens. The District Court affirmed the orders, and Kyser now brings them here. Before considering the merits of the appeal, we must consider a preliminary challenge to appellant's right of review, on the grounds that he did not petition the District Court therefor within ten days after the entry of the referee's order assailed or "within such extended time as the court may for cause shown allow," Bankruptcy Act, § 39, sub. c, 11 U.S.C.A. § 67, sub. c, and further that he did not designate the order confirming the plan as one of the orders appealed from.

Since appellant's petition for review of the first three orders was filed May 17, 1939, it cannot be good unless the bankruptcy court [i. e., the referee, § 1 (9), 11 U.S.C.A. § 1 (9)] had extended the time for review. A second petition, for review of the last order of June 21, 1939, was duly filed on June 27, 1939; but that order, in so far as it was attacked, was merely repetitious of the earlier ones, and hence must stand or fall with them. In re Irving-Austin Bldg. Corp., 7 Cir., 96 F.2d 905. Appellant, however, in his first petition made oath that he duly excepted to the orders in question and requested an extension of time to the conclusion of the various hearings in the matter to present his petition for review on appeal, and that "said extension was granted by the Referee in open Court." There is no evidence to the contrary in the record; it is in fact supported by a colloquy at a hearing a week before the petition was filed, in which the referee said in effect that no more extensions would be granted after another week. This discussion also disclosed cause for the extension in appellant's assertion that he did not want to take fruitless appeals until the proceedings were terminated. The court below granted the review and passed on the merits. We see no occasion to do otherwise. We therefore do not feel it necessary to pass on appellee's contention that an application for extension of time to seek review must be made before the ten days have elapsed, as held in In re Parent, D.C.N.H., 30 F.Supp. 943; but see Thummess v. Von Hoffman, 3 Cir., 109 F.2d 291; In re Madonia, D.C.N.D. Ill., 32 F.Supp. 165.

We are clear, too, that this petition adequately describes the confirmation order as one of those of which review is sought; it purports to refer to two different orders of January 21, 1939, and cites specifically an order holding debtors' arrangement "for the best interest of the creditors, that it was fair, equitable and feasible, * * * in good faith, and that the provisions of Section 472, 11 U.S.C.A. § 872, * * * were complied with."

The first question presented on the merits is whether or not Rubenstein's mortgage has priority over the mechanics' liens, as the referee decided in his first order. The mortgage was made September 3, 1937, to Isadore Kallet; it was recorded the next day and was by Kallet assigned to Rubenstein under date of September 16, the assignment being recorded October 19, 1937. According to the evidence, this mortgage was executed by the debtors to Kallet, their general contractor for the improvement, so that he could raise funds for the work. He advanced no money, but sold the mortgage to Rubenstein; the money which he received from Rubenstein he expended for various costs of the improvement. Kyser challenges the referee's ruling because the mortgage contained

no covenant, as required under N. Y. Lien Law, Consol.Laws N.Y. c. 33, § 13, that the proceeds thereof would be received as a trust fund to be applied first to payment of the cost of the improvement of the property affected. The referee found as a fact that the mortgage was made and recorded before the improvement was begun, and hence before the statute applies. The basis for that finding is not stated; we think it must be erroneous. The evidence is clear that Kyser made his first deliveries of the lumber on August 26, 1937. "Improvement" includes not only work done, but also "materials furnished" for "permanent improvement" of real property, N. Y. Lien Law, § 2, and the time at which materials are being furnished is naturally the time at which improvements are being made. See Telsey v. Calvin-Morris Corp., 260 N.Y. 456, 459, 184 N.E. 53. We think the statutory requirements are not avoided on that ground.

Appellee Rubenstein argues, however, that the statute is nevertheless inapplicable because the proceeds were paid directly to the chief contractor, who actually applied them against the cost of the improvement. Turning, therefore, to the statute, we find that N. Y. Lien Law, § 13, deals at considerable length with various problems involving the "Priority of liens." Subdivision 2 thereof first grants priority to a duly recorded "building loan mortgage" containing the covenant stated in 3 over a mechanic's lien to the extent of advances made before the filing of the notice of the lien; it then continues: "Every mortgage recorded subsequent to the commencement of the improvement and before the expiration of four months after the completion thereof shall, to the extent of advances made before the filing of a notice of lien, have priority over liens thereafter filed if it contains the covenant required by subdivision three hereof." Subdivision 3 states: "Every such building loan mortgage and every mortgage recorded subsequent to the commencement of the improvement and before the expiration of four months after the completion of the improvement shall contain a covenant by the mortgagor that he will receive the advances secured thereby as a trust fund to be applied first for the purpose of paying the cost of improvement, and that he will apply the same first to the payment of the cost of improvement before using any part of the total of the same for any other purpose * * *." And subdivision 5 provides that "no instrument of conveyance recorded subsequent to the commencement of the improvement, and before the expiration of four months after the completion thereof, shall be valid as against liens filed within four months from the recording of such conveyance, unless the instrument contains a covenant" that the grantor will receive the consideration as a trust fund to be applied first to paying the cost of the improvement, and so forth, as in 3.

In addition, there are definite provisions in both 3 and 4 protecting the lien which contains the covenant required by 3 or the provisions mentioned in 5; and there is an important proviso added in 1930 (L.1930, c. 859, § 7) to the part of 3 quoted above, which requires, when the party executing the building loan contract and receiving the advances is not the owner, that the covenant in question shall be in the contract duly executed and filed, rather than in the mortgage. All these show a definite statutory scheme to protect the liens of those mortgages which comply with the requirements, and to render invalid as against duly filed liens those which do not comply. Doubtless, as appellee claims, the underlying legislative purpose was to prevent diversion of the funds raised on the real estate while it was being improved from payment for those improvements. (That the provision "would not benefit" the claimant where the consideration is used wholly for the improvement is indeed stated, as to the earlier law before 5 was added, in the case particularly relied on by appellee, Alguire v. Barrow, 151 Misc. 177, 272 N.Y.S. 308; but the court there significantly noted that the lienor-claimant had consented to the mortgage, and that it was his understanding that he should look to the mortgagee-contractor for his pay—had "elected" to take the latter "as his paymaster.") The legislature, however, chose a definite method for carrying out its objective and stated no exception. Presumably it concluded that the matter should be made definite of record, so that lienors might be able to learn when such a fund was established for their benefit, that purchasers and other incumbrancers might know the exact status of the realty, and that the mortgagees themselves in turn might know how far they were protected from the claims of liens. The advantages of certainty which a formal record gives are not to be overlooked;

at any rate we do not feel we should import into the statute an exception which the legislature did not.

But appellee relies on a legislative committee report, 1930 N. Y. Legislative Documents, No. 72, page 13, as stating that "there is no real reason why the mortgagor, who does not handle the money in any way, should be required to make the covenant." When this statement is restored to its context, quite a different meaning from that suggested appears obviously to have been intended. For the committee in question was reporting in favor of the amendment (L.1930, c. 859) which became the proviso referred to above, applying, as the committee points out, to the many transactions where the mortgage is given by the owner, whereas the improvement is to be made by the lessee. The report expresses the committee's view "that it is sufficient for the purpose of the act" under the circumstances for the covenant to be contained in the building loan contract "which is on file" and which is signed by the person who is actually to receive the advances under the mortgage. Then follows the statement quoted by appellee. By its very limitation it reënforces the general scheme we have set forth. Further emphasis is given by other changes in the law. Until 1932, the quoted provision of 2 above was in negative form: "No mortgage" "shall have priority," etc., unless it contains the required covenant. This was a definite subordination of the defective mortgage. Church E. Gates & Co. v. B. N. Builders, Inc., 238 App.Div. 163, 263 N.Y.S. 613, and see, also, Telsey v. Calvin-Morris Corp., supra, where, however, the property in dispute was held to be furniture, not part of the realty. By L.1932, c. 627, the statute was changed to the provision quoted. Though this appears as an affirmative statement, it actually limited the mortgage priority still further by restricting it to the advances made before notice of lien was filed; further, the broad prohibitions of 5 were added. And in 1935 (L.1935, c. 922), it was thought necessary to make a special stated exception in favor of a mortgage taken by the home owners' loan corporation.

Construction of these provisions by the New York courts has not been extensive, but we think they tend to indicate this as the correct interpretation. Church E. Gates & Co. v. B. N. Builders, Inc., supra. Shilowitz v. Wadler, 237 App.Div. 330, 261 N.Y. S. 351, excepts purchase-money mortgages from the application of the statute, in view of their nature, as not covering "advances" for improvement, and the common-law precedents giving them priority—an exception which also by its limitation emphasizes the general rule. Here there was no building loan mortgage or any duly filed contract, only an ordinary mortgage without a covenant. We conclude that it is subordinate to Kyser's lien. This makes unnecessary consideration of Kyser's further claim of estoppel against Kallet, who ordered the lumber, and against Rubenstein, as the latter's assignee.

This conclusion requires reversal of all the orders, for the priority erroneously accorded Rubenstein's mortgage necessarily vitiates all subsequent proceedings based upon it. The order classifying creditors reaffirmed the priority; and the orders confirming the arrangement and directing its consummation were premised upon it and upset the priority due Kyser's lien. Case v. Los Angeles Lumber Products Co., 308 U.S. 106, 60 S.Ct. 1, 84 L.Ed. 110.

Since the case will be remanded for further proceedings, we think we should say that there was also error in the finding that a two-thirds majority of each class of creditors accepted the plan under § 468, 11 U.S.C.A. § 868; although the indefiniteness of the order classifying creditors makes it impossible to determine which of several possible errors was made. Whatever was actually done in this respect, it is certain that Rubenstein's mortgage, being either prior or subordinate to the various materialmen's liens, should not be placed in the same class with them. § 452; see former § 77B, sub. c(6), and present § 197, 11 U.S.C.A. §§ 852, 207, sub. c (6), 597, and the comment at 2 Gerdes, Corporate Reorganizations (1936) 1682, approved in In re Palisades-on-the-Desplaines, 7 Cir., 89 F.2d 214, 217, 218, and in St. Louis Union Trust Co. v. Champion Shoe Machinery Co., 8 Cir., 109 F.2d 313, 316. See, also, Continental Ins. Co. v. Louisiana Oil Refining Corp., 5 Cir., 89 F.2d 333, 338, certiorari denied Bache v. Louisiana Oil Refining Corp., 305 U.S. 622, 59 S.Ct. 82, 83 L. Ed. 397, and Classification of Claims in Debtor Proceedings, 49 Yale L.J. 881, 885, that a different treatment in the plan of claims of even the same economic status requires separate classification.

 Nor should the lienors be deprived of all vote, except as unsecured creditors upon that part of their claims, in excess of the value of their security, classified under § 453 as unsecured. If an arrangement is to be adopted through vote of the unsecured creditors alone on the theory that the secured creditors are not affected, since their claims have been devalued to the value of the security, then control of the arrangement will by this device be always thrown into the hands of the unsecured creditors. This proves too much. The statute, § 461(1), provides for safeguarding of the interests of secured creditors through the issuance of new securities or otherwise, a provision never operative if this device is legal. Here the interests of these creditors were certainly "materially and adversely affected", § 407, by the extensive change made in the amount and status of their claims. Since their rights are definitely altered, they are creditors affected by the arrangement. Finletter, Law of Bankruptcy Reorganization (1939) 501, 502. On this basis the required vote was not obtained for the plan, since Kyser's claim alone amounted to 39 per cent of the secured claims.

 Nor was this requirement obviated by "adequate protection for the realization by them of the value of their debts against the property," as provided in § 461(11). The value as scaled down by the terms of the plan, which was not to be fully realized for ten years, was in any event substantially less than the $6,190 found to be the value of the property affected by the liens sacrificed under the plan. This settlement does not comply with any of the three specific methods of dealing with dissenting classes specified in the statute—continuance of the security, sale at a fair upset price applied to these debts, appraisal and payment in cash of the value of the debts. Ibid. (a)–(c). It may not be tolerated under the generalities of the fourth, providing for protection "by such method as will * * * equitably and fairly provide such protection." Ibid. (d). See similar guarantees in former § 77B, sub. b (5), and present § 216(7, 8), 11 U.S.C. A. § 616(7, 8). This last "is not; properly speaking, a 'method' at all"; in any event, it is not to be so broadly construed as to nullify the more specific guarantees, and adequate protection "must be completely compensatory." In re Murel Holding Corp., 2 Cir., 75 F.2d 941, 942; Francisco Bldg. Corp. v. Battson, 9 Cir., 83 F.2d 93; Security-First Nat. Bank of Los Angeles v. Rindge Land & Navigation Co., 9 Cir., 85 F.2d 557, 107 A.L.R. 1240, certiorari denied 299 U.S. 613, 57 S.Ct. 315, 81 L.Ed. 452; 2 Gerdes, Corporate Reorganizations (1936) 1674, 1712; Finletter, Law of Bankruptcy Reorganization (1939) 477, n. 16; 46 Yale L.J. 116; 50 Harv.L.Rev. 525; 25 Calif.L.Rev. 739; 23 Va.L.Rev. 330.

Since it is clear that a new plan of arrangement, if one should be proposed, must differ widely from this one, no good purpose would be served by consideration now of the objection that the plan was unfair and inequitable under § 472(3) and Case v. Los Angeles Lumber Products Co., supra.

Each of the orders appealed from is reversed; and the case is remanded for further proceedings not inconsistent with this opinion.