Earl RADER, Appellant,

v.

J. Marvin BOYD, Appellee.

No. 6112.

United States Court of Appeals
Tenth Circuit.

June 10, 1959.

Rehearing Denied June 25, 1959.

912

Charles D. Crandall and Herbert K. Hyde, Oklahoma City, Okl. (Roy St. Lewis, Washington, D.C., was with them on the brief), for appellant.

J. D. DeBois, Duncan, Okl. (James A. DeBois, Duncan, Okl., was with him on the brief), for appellee.

Before MURRAH, LEWIS and BREITENSTEIN, Circuit Judges.

BREITENSTEIN, Circuit Judge.

For the second time these parties present their bitter controversy arising out of appellant Rader's efforts to secure a real property arrangement under Chapter XII, Title 11 U.S.C.A., over the objection of his secured creditor, appellee Boyd. On the first appeal [1] this court rejected the claim of Rader that Boyd had no standing to object to the arrangement because of a fiduciary relationship and affirmed the rejection of the proposed arrangement by the trial court. Rehearing was denied "without prejudice to the submission of another plan under the provisions of Chapter 12 of the Bankruptcy Act." After remand, another arrangement was proposed, objections thereto sustained, and an adjudication of bankruptcy made.

1. Rader·v. Boyd, 10 Cir., 252 F.2d 585.

The properties involved consist of oil and gas leases on which there are producing wells. The first proposed arrangement provided for the retention of the estate by the debtor, the deferment of payment to creditors, the accumulation of income from oil runs, the use of the accumulated income for the drilling of other wells, and the ultimate payment in full of all debts. This court held that such arrangement was a speculative venture with creditor's funds, did not adequately protect the secured creditor, and was not feasible within the contemplation of the Bankruptcy Act.

After the remand the debtor filed a "Proposed Plan for Arranging the Debts and Payment Therefor." This proposal contemplated the transfer of the properties to a corporation authorized to issue 1,000,000 shares of stock at a par value of $1. Evidence adduced in support of the plan shows that 600,000 shares of the stock were to be distributed to one Jouett Shouse in return for a loan to the corporation of $100,000 to be used in the rehabilitation and development of the properties. The remaining stock was to be issued 100,000 shares to debtor Rader, 167,000 shares to the attorneys for the debtor, and 133,000 shares to the creditors other than Boyd. The $100,000 advance by Shouse was to be secured by trustee's certificates which in the event of liquidation would have a prior position to the secured claim of Boyd.

The court conducted extensive hearings and refused confirmation holding that the proposed arrangement was not feasible, did not adequately protect secured creditor Boyd, and failed to meet the requirements of Chapter XII. Such determination is consistent with the opinion of this court in the first appeal wherein the first proposal was characterized as "a speculative venture with accrued funds belonging to the secured creditors." The second proposal is a speculative venture with funds obtained by the pledge of the property constituting the security of the creditor Boyd. There is no essential difference. In each instance the security of the creditor Boyd is to be used to finance a venture, the outcome of which is clouded with doubt.

The fact that the claim of Boyd had not been allowed and the amount thereof not fixed with certainty does not detract from the holding of the trial court because Rader conceded through his counsel that approximately $140,000 was due Boyd.[2] The evidence of the sponsors of the arrangement is that the property is worth far more than the debts due Boyd. In such circumstances Boyd is entitled to be paid and the proposed arrangement does not adequately protect him. The requirements of § 861(11) for "adequate protection" mean that when the value of the security is greater than the debt, the protection afforded by an arrangement must be completely compensatory.[3]

Counsel for Rader insist that Boyd is using his position as secured creditor to defeat the proposed arrangement with the intent of securing the property

2. This appears in counsel's December 16, 1958, letter to the trial judge which will be discussed later. Boyd asserts assigned claims which he purchased at a discount. The situation in this regard is covered by the opinion on the first appeal. In Schedule A–2, attached to Rader's petition under § 822, the amount of the Boyd claim is listed as $159,039.97. In the proceedings subsequent to remand Rader's counsel admitted that Boyd spent $235,542.76 to acquire the claims which he holds. A statement of Boyd's accountants shows that on July 2, 1958, $296,164.46 was due Boyd on account of principal and interest. This has since been reduced by payments to Boyd from oil runs. At the time of the disposition of the matter in the lower court Boyd claimed that approximately $230,000 was due and unpaid.

3. Kyser v. MacAdam, 2 Cir., 117 F.2d 232, 238, and authorities there cited. Cf. Palo Alto Mutual Savings and Loan Association v. Williams, 9 Cir., 245 F.2d 77, 78, and Louisville Joint Stock Land Bank v. Radford, 295 U.S. 555, 575, 576 et seq., 55 S.Ct. 854, 79 L.Ed. 1593.

for himself, and they urge that the trial court should exercise its equitable powers and approve an arrangement which they say is fair to all. Compliance with § 861(11) is claimed on the basis that the arrangement adequately protects Boyd by enhancing the value of his security through rehabilitation and development work to be financed with the borrowed $100,000. The difficulty is that the results are speculative and the financing is to be obtained by the subordination of Boyd's security to a first lien in favor of the lender. The answer is clearly indicated. Shouse will not advance the money unless he has a first lien. His insistence on security justifies the position of Boyd that the arrangement will impair the security which he, Boyd, now has. The rejection of the second proposed arrangement meets with our approval.

■ One aspect of the proposal remains to be considered. After the conclusion of the hearings, counsel for Rader wrote a letter, dated December 16, 1958, to the trial judge in which they say that they have been instructed to offer Boyd $140,000 and they say that this amount represents the full return of his investment plus 6% interest. The informal statement in the letter does not rise to the dignity of an arrangement. If it be considered an alteration or modification of an arrangement, there was no effort to comply with §§ 869–871. The court properly ignored it.

■ After rejecting the proposed arrangement the court summarily adjudicated the debtor a bankrupt and placed him in general bankruptcy. This was in direct violation of § 881(2). It is there provided that if confirmation of the arrangement is refused the court shall, where the petition was filed under § 822, the section under which this petition was filed, enter an order upon hearing and after notice to the debtor and creditors and such other persons as the court may direct either adjudging the debtor a bankrupt and directing proceedings in bankruptcy or dismissing the proceedings, whichever in the opinion of the court may be in the interest of the creditors. Here there was no notice and no hearing. The adjudication of bankruptcy was void.

■■ As the judgment must be reversed, one other point should be mentioned. On the first appeal this court held that there was no fiducial or confidential relationship between Boyd and Rader. This means that the amount of Boyd's claim may not be reduced because of any fiducial or confidential relationship.[4] However, this court did not allow Boyd's claim or determine the amount thereof. That is a function of the trial court.

■ On remand the trial court should proceed in conformity with § 881 (2). This does not preclude another arrangement meeting the requirements of Chapter XII. There is nothing in Chapter XII which prevents the proposal of an altered or modified arrangement prior to dismissal or adjudication in bankruptcy.[5] While an adjudication of bankruptcy may not be unreasonably deferred by the submission of successive plans, the court in the wise exercise of its discretion should afford fair opportunity for the submission of an arrangement which satisfies Chapter XII. It is for the trial court to determine whether the statutory requirements are met or whether the matter must be concluded by dismissal or adjudication.

The judgment is reversed for further proceedings in harmony with the views expressed herein.

4. Cf. Monroe v. Scofield, 10 Cir., 135 F. 2d 725, 728.

5. Cf. Case v. Los Angeles Lumber Products Co., 308 U.S. 106, 131–132, 60 S. Ct. 1, 84 L.Ed. 110.