In the Matter of the Owners of "SW 8" Real Estate, by the Owners Management Committee, consisting of Walter L. Peterson, et al., Debtors.

OWNERS OF "SW 8" REAL ESTATE, etc., Petitioners-Appellants,

v.

Thomas L. McQUAID, Trustee of Federal Shopping Way, Trustee-Appellee.

WASHINGTON STATE INSURANCE COMMISSIONER, Statutory Rehabilitator for Federal Old Line Insurance Company, Creditor-Appellant,

v.

Thomas L. McQUAID, Trustee of Federal Shopping Way, Trustee-Appellee.

Nos. 72-3001, 72-3002.

United States Court of Appeals, Ninth Circuit.

March 14, 1975.

James R. Irwin, Seattle, Wash. (argued), and Burton W. Lyon, Jr., Tacoma, Wash. (argued), for appellants.

David Oesting, Seattle, Wash. (argued), for trustee-appellee.

Before TRASK and SNEED, Circuit Judges, and JAMESON,* District Judge.

## OPINION

TRASK, Circuit Judge:

On March 4, 1970, the Debtor-Petitioners (six individuals) filed a petition in the lower court for a real property arrangement under Chapter XII of the Bankruptcy Act. The Referee in Bankruptcy dismissed the petition and the District Court on review approved and adopted the order of the Referee. This appeal is taken by Debtor-Petitioners from the action of the District Court.

Arrangements under Chapter XII of the Bankruptcy Act are available only to persons other than corporations who own real property which is security for a debt. 11 U.S.C. §§ 801 et seq.; 9 Collier, Bankruptcy §§ 1.01, 2.07 (1972 ed.)

* Honorable William J. Jameson, Senior District Judge from the District of Montana, sitting by designation.

Section 422 of the Act, 11 U.S.C. § 822, provides:

"If no bankruptcy proceeding is pending, a debtor may file an original petition under this chapter with the court which would have jurisdiction of a petition for his adjudication."

Section 406(6) of the Bankruptcy Act, 11 U.S.C. § 806(6), states that:

"For the purposes of this chapter, unless inconsistent with the context—

. . . . .

"(6) 'debtor' shall mean a person, other than a corporation as defined in this act, who could become a bankrupt under § 4 of this act, who files a petition under this chapter, and is the legal or equitable owner of real property . . . which is security for any debt, but shall not include a person whose only interest in property proposed to be dealt with by the arrangement is a right to redeem such property from a sale before the filing of such petition; . . ."

The issue to be determined at the outset is whether the Debtor-Petitioners upon the facts of this case are within the meaning and purpose of Chapter XII. They allege that they are purchasers of undivided interests in real property known as the Southwest Eight Acres (SW 8), a parcel forming part of a shopping center complex in King County, Washington, known as Federal Shopping Way. Federal Shopping Way, Inc. (FSW) was the original owner and developer of the entire property and undertook to sell the southwest eight acres. To that end small interests were sold according to a formula set forth in "Exhibit A" of the Earnest Money Receipt & Agreement given to each purchaser.

" . . . deeds shall be executed by the seller, setting forth each purchaser's title interest in proportion to the amount paid by each party according to the following ratio hereinafter

referred to as 'U.I.F.' or undivided interest formula.

"The undivided interest formula 'U.I.F.' shall be based on the aforesaid purchase price of $2,500,000.00. This total shall, in turn, be divided into 100 undivided interests in the real estate hereinafter described. Each such $25,000.00 undivided interest shall be referred to as a 'segment'. No segment shall be divided into a unit less than a fractional interest of $1/25$ of a 'segment', or $1,000.00 of purchase price. That such portions of a segment of the title to this real estate may be referred to herein as a 'fractional unit,' or $1/25$ of a segment."

Thus, each purchaser of a $1,000 interest obtained a unit which consisted of an undivided interest equal to $1/25$ of a segment or $1/2500$ of the stated purchase price of the "SW 8."[1] Deeds were given to each purchaser showing the description of the "SW 8" parcels and set forth the undivided interest which the purchaser had obtained. The deeds contained the following statement:

"Subject to agreements running with the land with all other owners of [FSW] undivided interests . . . which include an agreed waived of the right to partition . . .."

The documentation also provided that the purchaser's interest could not be further subdivided by the interest holder or be severed or released from the contractual duties owed to other interest holders. Further, the owner was forbidden to sell, encumber, or improve the land except upon reasonable and fair decision of 75 percent of the owners at a conference called for the purpose of considering such action.

The files and records of FSW show that it began selling interests in June 1962, and that a total of 2,576 interests were sold for an aggregate of $2,734,980 to 1,057 different persons. Six hundred and ten purchasers of 1,525 units paid approximately $1,613,325 and received

---

1. The "SW 8" originally consisted of two parcels, Parcel A and Parcel B. Later a Parcel C was added resulting in a change of the basic price. The addition and change is not significant in a consideration of the legal issues.

deeds. Three hundred and eighty-one purchasers of 759 units, paid approximately $827,030 but received no deeds. Sixty-six purchasers of 143 units have unpaid, contract balances totaling $59,-685.57. In addition, 149 units were sold but no payments are reflected for such units.

In 1962 the Administrator of Securities of the State of Washington brought suit against FSW alleging that the offer or sale of interests in "SW 8" without registration constituted a violation of the State Securities Act. A temporary injunction was issued but later modified upon condition that certain changes be made in the agreement, one of which was that the number of interest holders necessary to approve a sale, encumbrance, lease or improvement of the land was reduced to a simple majority.

An involuntary petition for reorganization under Chapter X of the Bankruptcy Act was filed against FSW on November 13, 1967. On May 3, 1972, an order was entered adjudicating FSW a bankrupt, and a trustee was appointed.

The Chapter XII petition was filed on March 4, 1970, and a trustee appointed. On May 14, 1970, the Insurance Commissioner filed a motion to dismiss the petition for the reason that the petitioners were not debtors within the meaning of the Chapter and because the arrangement attached to the petition was insufficient. The Insurance Commissioner was the statutory receiver of Federal Old Line Insurance Company (FOL) currently under liquidation. It held what purported to be a real property mortgage on a portion of the "SW 8."

The FSW Trustee (Trustee) under the Chapter X proceeding contends that the interests which the Debtor-Petitioners acquired from FSW were only intangible contract rights between themselves *inter se* and FSW, are personal as opposed to real property and that petitioners are therefore not "owners of real property" within the meaning of section 406(6) of the Bankruptcy Act. The Trustee also contends that the deeds are legally insufficient to effect a conveyance of real property; that the restraints on alienability are such as to render them void as against public policy; and that the other 1,051 co-tenants are indispensable parties under a Chapter XII proceeding.

The Bankruptcy Court concluded that the Debtor was not one as defined by the Act; that the plan of arrangement was insufficient; and that the interests created in "SW 8" are securities in the nature of personal property. Except for the three rather general statements thus made, the Referee did not find any facts specially. He summarized the admitted facts as stated herein and discussed the contentions of the parties in narrative form. Under those contentions the Referee questioned whether one tenant in common could file a petition on behalf of another and cited authority that all must consent.[2] Thereafter he acknowledged that a waiver can be made by the holder of a fractional interest but stated that not all interest holders here had waived and two had objected.[3]

He then questioned whether the Debtor had the requisite interest in real estate and inquired whether the absence of a right to occupy and enjoy the fractional interest or to deal with it by way of

---

**2.** In re Chakley, 34 F.Supp. 969 (E.D.Tenn. 1940), the principal case cited, was a case where no issue as to delegation of authority was raised.

**3.** The record discloses that an attempt to circularize all interest holders was discontinued under court order. Of the two objectors one is the mortgagee and thus probably not an "owner."

In the face of the express allegation in the verified petition that "The Petitioners were duly chosen pursuant to a real estate instrument which is included in Exhibit 1, attached hereto and by reference made a part hereof and have been duly authorized to act for said owners as therein prescribed by an Owners Conference," there is no finding whether the allegations are correct or incorrect. Although testimony was taken, the Reporter's Transcript of that testimony has not been made available in the appellate record. The allegation is not challenged in the briefs, and we make no determination with regard thereto.

alienation prevented its classification as an interest in realty, concluding that:

> "In summary, the undivided interests, intrinsically and in terms of public policy, should not be considered real estate. If anything, they are securities."

With this mixed finding of fact and of law we cannot agree.

■ It appears clear that the formal conveyance of a fractional interest was of a size and nature to make it useless in the hands of the grantee for use as an ordinary parcel of real estate. The interest often purchased was of a ½₅₀₀ interest in 8 acres of improved realty. The right to partition was waived, if in fact a partition in kind ever existed. No right of possession existed because the parcel was then subject to a 40-year lease. The grantee could not encumber, lease or improve his interest except upon an agreement of a large number of co-owners (either a majority or 75 percent). The essence of his purchase was an investment. SEC v. W. J. Howey Co., 328 U.S. 293, 66 S.Ct. 1100, 90 L.Ed. 1244 (1946). But the fact that it was an investment does not prevent it from being a purchase of an interest in real property. When the house of cards commenced to fall the combined interests of all of the "SW 8" investors represented a parcel of real property having a considerable value. FOL does have a mortgage under which it has asserted a right to foreclose. Some of the "SW 8" is under leases and producing income.[4] The overall situation appears to be one for which Chapter XII would be appropriate to afford a remedy unless other considerations foreclose its application. We consider the other objections.

■ It is contended that the deeds are void because they violate a public policy against restraints on alienation or because the estate conveyed is so ambiguous and uncertain that the grant is void.

As to the latter we see no such objection upon an examination of the copies of the conveyances in the record. The grantor and grantee are specified; the description of the land is traced by a metes and bounds description of a surveyed parcel; and the particular interest of the grantee is stated. The instruments were in writing signed by the grantor and acknowledged. Revised Code of Washington, §§ 64.04.020, 64.04.030. That the grant is of a fraction which must be computed does not render the deed void when the instrument on its face makes clear how the computation may be made. Nor does the waiver of the right to partition constitute a condition rendering the deed void. *See* Carter v. Weowna Beach Community Corp., 71 Wash.2d 498, 429 P.2d 201 (1967). If it offends the public policy of the State of Washington, that state need not invalidate the deed. It could simply declare the restriction invalid. Richardson v. Danson, 44 Wash.2d 760, 270 P.2d 802 (1954); Fowler v. Wyman, 169 Wash. 307, 13 P.2d 501 (1932).

In the brief for the Appellee-Trustee of FSW it is asserted generally that the arrangement "does not comply with the mandates of §§ 423 and 461(1) of the Bankruptcy Act, 11 U.S.C. §§ 823, 861." Appellee then quotes section 823:

> "A petition filed under this chapter shall state that a debtor is insolvent or unable to pay his debts as they mature, *and shall set forth the terms of the arrangements* [sic] *proposed by him.* 11 U.S.C. § 823 (Emphasis added)."

■ The emphasis is to the portion of the section requiring the terms of the arrangement to be set forth. No point is made as to the sufficiency of the allegation of insolvency in the petition.[5] The Trustee continues by challenging the sufficiency of the proposal for an arrangement insofar as it affects FOL.

---

**4.** Such leases were asserted to have been executed by the Owners Management Committee.

**5.** Neither the District Court, the Referee, nor either of the parties has challenged the allegation of insolvency of petitioners in the petition

or discussed the sufficiency of the petition in that regard. In the absence of such and of a Reporter's Transcript we do not address the question.

This challenge is based on the contention that FOL would not consent to any arrangement and since an arrangement under Chapter XII must be "voluntary," the petition must be dismissed. It is correct that where there is a sole affected creditor and that creditor rejects a plan, dismissal is proper. Taylor v. Wood, 458 F.2d 15 (9th Cir. 1972); *see* Sumida v. Yumen, 409 F.2d 654 (9th Cir. 1969). However, so far as the record discloses, the Receiver of FOL has thus far moved to dismiss only upon technical grounds, and not for the reason that he would not be adequately secured.

The Referee makes a similar attack upon the sufficiency of the arrangement, again, in general terms with no express finding.

The petitioners should have an opportunity to promptly present an amended or new proposal for an arrangement which meets the requirements of Chapter XII. We leave the time within which this must be done to the determination of the District Court. If it is not accomplished or is not adequate within the context of the statutes or of the authorities here cited, then the District Court must determine whether the petition should be dismissed or an adjudication in bankruptcy made. *See* Rader v. Boyd, 267 F.2d 911 (10th Cir. 1959).

The case is remanded for further proceedings in accordance with the views expressed herein.

SNEED, Circuit Judge (concurring):

I agree that the interests created in "SW 8" are interests in real property and that the deeds creating such interests are not void under the law of Washington. I am also prepared to acknowledge that there exists no adequate challenge to the sufficiency of the allegation of insolvency in the petition.

I do wish, however, to register my strong doubt that the Debtor-Petitioners can demonstrate the insolvency of the mortgagors and their inability to pay their debts as they mature by reference only to the mortgaged property. For the purposes of Chapter XII a "debtor" is defined as a "person, other than a corporation as defined in this title, who could become bankrupt under section 22 of this title, . . ." 11 U.S.C. § 806(6). The petition required to be filed by a "debtor" must state "that the debtor is insolvent or unable to pay his debts as they mature, . . ." 11 U.S.C. § 823. The Bankruptcy Act provides that "a person shall be deemed insolvent within the provisions of this title whenever the aggregate of his property, . . . , shall not at a fair valuation be sufficient in amount to pay his debts;" 11 U.S.C. § 1(19). These provisions have led a commentator to observe: "If, a Chapter XII petition is filed jointly in behalf of a partnership and of one or more general partners, the petition should allege insolvency or inability to pay debts *with respect to each petitioner.*" (emphasis added) 9 Collier on Bankruptcy, 848 (14th ed. 1972). This observation and the authorities upon which it is based strongly suggest that as a minimum the Debtor-Petitioners must allege the insolvency or inability to pay debts with respect to each Debtor-Petitioner and that such insolvency shall be determined by reference to the aggregate of the property (not just the mortgaged property) of each such Debtor-Petitioner. It is also clear that it would not be illogical to insist that the insolvency of each co-tenant be alleged if his interest is to be subjected to a Chapter XII arrangement.

These doubts incline me toward believing that Chapter XII is a singularly unsuitable device for adjusting the competing interests which are present under the facts of this case. However, counsel did not address themselves to these problems nor have they been ventilated in proceedings before the Referee or district court. For this reason I join in the decision to reverse and remand.

JAMESON, District Judge (concurring):

I concur in the decision to reverse and remand.

In addition to the question raised by Judge Sneed, I doubt whether the six

petitioners were authorized to represent the other co-owners. As Judge Trask has noted in his opinion, however, the petition contained an allegation that the petitioners were authorized to act for all of the owners by an Owners' Conference. While the Referee concluded that tenants in common may not file a petition on behalf of co-tenants, he did not expressly address the question of whether the Management Committee had been authorized to act for all the owners, simply noting the contention of the Insurance Commissioner that the Management Committee was not authorized to file the petition. I agree accordingly that this question should be determined on remand.