In the Matter of SCHWAB ADAMS COMPANY, a Limited Partnership, Debtor.

No. 77 B 225.

United States District Court, S. D. New York.

Feb. 2, 1978.

Elson, Halperin & Mendalis by Joel N. Holstein, New York City, for Debtor.

White & Case, by John Provine, New York City, for Prudential Ins. Co. of America.

Weil, Gotshal & Manges, by Judith Garson, New York City, for Reorganization Trustee of Investors Funding Corp., of New York, et al.

Milbank, Tweed, Hadley & McCloy, by David Frauman, New York City, for Chase Manhattan Bank, N. A.

Phillips, Nizer, Benjamin, Krim & Ballon, by Martin Brecker, New York City, for Trustees of C. I. Mortg. Group.

## OPINION

ROBERT L. CARTER, District Judge.

*Statement of the Facts*

The debtor filed a petition in the Bankruptcy Court seeking an arrangement under Chapter XII of the Bankruptcy Act. The debtor was permitted to retain possession of its sole asset, land and an apartment building erected thereon known as Schwab House located at 11 Riverside Drive, New York, New York.

Schwab House is encumbered by the following three mortgages: (1) a first mortgage held by Prudential Insurance Co. of America ("Prudential") in the aggregate unpaid principal amount of $4,771,998.13 plus accrued interest and expenses; (2) a second mortgage held by the trustees of C.I. Mortgage Group ("C.I."), in the unpaid principal amount of $4,800,000 plus accrued interest; and (3) a third mortgage originally held by IFC Collateral Corporation ("IFC"), and later assigned as security to Chase Manhattan Bank N.A. ("Chase"), in the unpaid principal amount of $3,363,001.87 plus accrued interest.

The first mortgage originally matured on October 1, 1974, but was subsequently modified and extended to October 1, 1976 with interest at 10% per annum. On October 1, 1976, the debtor defaulted by failing to pay to Prudential the entire principal balance which was then due and owing. Since October 1, 1976, no part of said principal balance has been paid.

On January 31, 1977, Prudential commenced proceedings in the Supreme Court of the State of New York, County of New York to foreclose its first mortgage. The court appointed Charles Korn and Samuel M. Gold as receivers of all rents and profits then due and unpaid or to become due from Schwab House during the pendency of the foreclosure proceeding. That proceeding was automatically stayed by the petition in this case and by the specific order of the Bankruptcy Court dated February 2, 1977.

On June 15, 1977, the court below issued an order permitting Prudential to continue the foreclosure proceeding to the point of sale and ordered the debtor to transfer possession of Schwab House and related moneys to the receivers.

This court (Brieant, J.), by opinion dated June 29, 1977, and order dated July 6, 1977, vacated the part of the order relating to transfer of possession of Schwab House and related moneys to the receivers, indicating that dismissal of the case would be appropriate if reorganization of the debtor was impracticable.

In July, 1977, the debtor filed a plan for modification of its secured and unsecured debts, and filed amendments to this plan in August, 1977. The proposed plan divides the creditors of the debtor into five classes, putting the holders of the first mortgage, second mortgage and third mortgage in Classes 1, 2 and 3, respectively.

The proposed plan would extend the first mortgage for ten years to October 1, 1986, with payments to be made in equal monthly installments of $40,054.43 including a reduced interest rate of 9% per annum. The remaining principal would become due and payable at the end of the ten year period.

The second mortgage would be extended for ten years to October 1, 1989; the principal would be reduced from $4,800,000.00 to $3,200,000.00, and be paid out of excess cash flow (as defined in the plan) in equal monthly installments of $26,855.00 including interest at a reduced rate of 9% per annum. The remaining principal would become due and payable at the end of the ten year period.

The third mortgage is to be modified so that during its entire term interest shall be paid quarterly at 9% per annum out of further cash flow (as defined in the plan) for a period of ten years at which time the remaining principal shall become due and payable.

### Decision of the Bankruptcy Court

The holders of the first, second and third mortgages have all rejected the plan and moved for dismissal. On November 14, 1977, the Bankruptcy Court held that since each of the secured creditors had rejected the plan, it could not be confirmed. It was also held that the plan could not be confirmed under § 461(11) of the Bankruptcy Act (11 U.S.C. § 861(11)) since none of the methods set forth in that provision were utilized, and the plan did not afford adequate protection to the secured creditors. On December 14, 1977, the Bankruptcy Court ordered the proceedings dismissed.

*Proceedings In This Court*

The debtor by order to show cause sought a stay of the implementation of the order below pending determination of the appeal. The stay was granted based on the agreement of the parties that the order to show cause for a stay would be merged with the appeal and that the appeal be expedited so that the whole controversy could be presented and determined on the merits without undue delay.

*Discussion*

There are no disputed facts and the facts as stated above are the court's findings of fact.

Appellant contends that the dismissal of the Chapter XII proceedings below must be reversed for two reasons: (1) the Bankruptcy Judge erred in ruling that its plan for modification of its secured and unsecured debts filed pursuant to Chapter XII could not be confirmed because the plan was unanimously rejected by all of appellant's secured creditors, and (2) the Bankruptcy Judge further erred in deciding, without first holding a hearing on valuation, that the plan did not provide adequate protection to the first mortgagee as required under § 461(11)(d). Since, for the reasons stated below, I believe the decision to be eminently correct, the judgment is affirmed and the appeal is dismissed.

While there are not a great many cases dealing with Chapter XII, there is virtually unanimity in the decided case law that rejection of a plan in a Chapter XII proceeding by all the secured creditors bars its confirmation. *See, e. g., In re Taylor v. Wood*, 458 F.2d 15 (9th Cir. 1972); *In re Georgetown Apartments*, 3 Bankr.Ct.Dec. 512 (M.D.Fla.1977); *Meyer v. Rowan*, 195 F.2d 263, 266 (10th Cir. 1952); *Kyser v. MacAdam*, 117 F.2d 232, 238 (2d Cir. 1941).

It is difficult for me to see how any other result can be reached without, of course, rewriting the statute in view of its clear and unequivocal language. Section 467 of the Bankruptcy Act (11 U.S.C. § 867) provides for confirmation when an arrangement has been unanimously accepted by all the creditors. Section 468 (11 U.S.C. § 868) goes on to provide:

"If an arrangement has not been [accepted unanimously by all the creditors as provided in Section 467], an application for the confirmation of an arrangement may be filed with the court . . . but *not before* —

(1) *it has been accepted in writing by the creditors of each class, holding two-thirds in amount of the debts of such class affected by the arrangement* proved and allowed before the conclusion of the meeting, or before such other time as may be fixed by the court, exclusive of creditors or any class of them who are not affected by the arrangement or for whom payment or protection has been provided as prescribed in paragraph (11) of section 861 of this title . . ." (Emphasis supplied.)

There are no holdings contrary to the view of the above cited cases. In both *In re Pine Gate Associates, Ltd.*, 10 Col.Bankr. Cases 581 (N.D.Ga.1976) and *In re Marietta Cobb Apartments*, 3 Bankr.Ct.Dec. 720 (S.D. N.Y.1977), where there was only one secured creditor, that creditor was not allowed to veto an arrangement which was felt to afford the creditor adequate protection. There may be policy considerations which render such an interpretation consistent with congressional purpose in enacting the legislation. Moreover, the Bankruptcy Judge in *Pine Gate, supra*, 10 Col.Bankr. Cases at 604–05, was careful to distinguish his holding from a situation such as here where there is more than one secured creditor and all reject the plan. While the Bankruptcy Judge in *Marietta Cobb* does make the argument made here, his statements are pure dicta since his holding went no further than *Pine Gates* in that a sole secured creditor was not allowed to veto an arrangement that afforded it adequate protection and offered the debtor real hope of rehabilitation. *But see In re Taylor v. Wood, supra*, 458 F.2d at 16, n.5, for the view that where there is only one secured creditor, his veto requires dismissal of the proceedings.

12

Even assuming, however, that appellant is right and that the plan could be confirmed in the face of rejection by all the creditors, appellant's follow up contention that the plan could not have been held unacceptable under 461(11) without a valuation hearing having first been held, is without merit. It is clear that this plan satisfies none of the requisites of 461(11). Accordingly, confirmation of the plan was prohibited.

Prudential, the first mortgagee, holds a mortgage that has already matured. A requisite to confirmation of a plan or arrangement under Chapter XII is that secured creditors affected be afforded adequate protection. When the value of the mortgaged premises exceeds the amount owed on the mortgage, the mortgagee is entitled to its principal and interest. *See Palo Alto Mutual Savings & Loan Ass'n v. Williams,* 245 F.2d 77, 78 (9th Cir. 1957). In short, in such circumstances the adequate protection afforded and required under the arrangement must be completely compensatory. *Rader v. Boyd,* 267 F.2d 911 (10th Cir. 1959); *In re Huntley Square Associates,* 2 Bankr.Ct.Dec. 1417 (D.Md.1976). There was no contention that the property is not sufficient in value to provide Prudential at a foreclosure sale with all principal and interest owed on the debt. Since the plan did not provide for payment in full or its indubitable equivalent to Prudential, it could not be confirmed. *See In re Nob Hill Apartments,* 2 Bankr.Ct.Dec. 1463 (N.D.Ga. 1976); *In re Murel Holding Corp.,* 75 F.2d 941 (2d Cir. 1935).

In lieu of full compensation or its equivalent, what was proposed was a further stretch out of the mortgage for ten more years at lowered interest rates and without the debtor investing any additional funds of its own. There is nothing to indicate that the debtor will be able ten years hence to retire the debt owed to Prudential. Such an arrangement has been held to be fatally defective because it allows the debtor to speculate with his creditor's funds. *See In re Huntley Square Associates, supra.*

If it is contended that the value of the mortgaged property is less than the principal and interest owed on the first mortgage, then adequate protection must provide the value of the debt. *In re Alpine & Lake Tahoe Paradise Ltd.,* 7 Col.Bankr. Cases 286 (S.D.Cal.1975). Under such circumstances, Prudential would be entitled to proceed with the foreclosure sale to obtain from the sale of the mortgaged premises what could be secured up to the value of the debt. In any event, a valuation hearing was not necessary to demonstrate to the Bankruptcy Judge that the arrangement proposed failed to provide Prudential, a first mortgagee, with the adequate protection § 461(11) necessitates before a court can "cram down" a plan or arrangement over the objections of the secured creditors affected.

The judgment is affirmed.

IT IS SO ORDERED.