In the Matter of CARTWRIGHT LAND
ASSOCIATES, Debtor.

Bankruptcy No. 79 B 1654.

United States Bankruptcy Court,
S. D. New York.

March 25, 1980.

Levin & Weintraub, New York City, for debtor.

Michael Berman, New York City, for plaintiff.

DECISION ON COMPLAINT OF NAS-
SAU COUNCIL OF GIRL SCOUTS,
INC. FOR AN ORDER TO MODIFY
STAY

HOWARD SCHWARTZBERG, Bank-
ruptcy Judge.

This adversary proceeding was brought by the plaintiff, Nassau Council of Girl Scouts, Inc. (Girl Scouts), pursuant to Bankruptcy Rule 12–43(d), for relief from the automatic stay of its mortgage foreclosure action, following the debtor's filing a petition under Chapter XII of the Bankruptcy Act (formerly 11 U.S.C. §§ 801–926). The plaintiff seeks to modify the stay so as to permit the sale of the real property, upon which it holds a first mortgage, pursuant to the judgment of foreclosure entered in the Supreme Court of the State of New York, Suffolk County.

In its first cause of action, plaintiff alleges that the debtor, Cartwright Land Associates (Cartwright), did not file its petition in good faith and that it filed solely for the purpose of delaying the foreclosure sale of the property because it does not have the financial ability to effect a plan of arrangement. In the second cause of action, plaintiff alleges that the debtor does not have the ability to provide it with adequate protection for the realization by it of the value of its debt against the property involved in the Chapter XII proceeding, Bankruptcy Act § 461(11). Plaintiff further asserts that the debtor does not have the ability to provide it with the "indubitable equivalent" of its security.

In addition to denying the allegations set forth in the plaintiff's complaint, the debtor asserts as an affirmative defense that there is neither the danger that the real property will be taken as a result of nonpayment of taxes nor the danger that the property will decline in value. Lastly, the debtor asserts that the determination of whether it has the ability to provide adequate protection to the plaintiff in accordance with § 461(11) of the Bankruptcy Act is one which should be made by the court pursuant to a hearing on feasibility and best interests in connection with the plan of arrangement.

## FACTS

1. On September 11, 1979 the debtor, Cartwright Land Associates, filed a petition under Chapter XII of the former Bankruptcy Act.

2. The debtor is a partnership engaged in the business of owning and operating real estate.

3. The plaintiff, Nassau Council of Girl Scouts, Inc., is a nonprofit corporation organized under the laws of the State of New York. The plaintiff is the successor to the original mortgagee, the Mid-Island Council Girl Scouts, Inc.

4. The property involved in the Chapter XII proceeding consists of approximately 70 acres of undeveloped land in the town of Islip, Suffolk County, New York. The property is zoned as an Industrial 1 district.

5. Plaintiff holds a first mortgage on the real property under which there is presently due and owing approximately $400,000.

6. There are seven (7) mortgages on the property totaling $1,200,000. As of January 2, 1980 the debtor owed the County of Suffolk and the Receiver of Taxes for the Town of Islip in excess of $270,000 for taxes due since 1975.

7. On November 29, 1979 plaintiff paid $65,768.69 to the Suffolk County Treasurer in payment of taxes due from the debtor for the years 1976 and 1977. Plaintiff was required to make this payment in order to preserve and protect its interest in the property.

8. On November 22, 1976, an action to foreclose the first mortgage on the property was instituted by Mid-Island Council Girl Scouts, Inc., the predecessor of the plaintiff, based upon the failure of the debtor to make payment pursuant to the terms of the mortgage.

9. A foreclosure sale of the property scheduled for November 2, 1978 was adjourned sine die based upon an agreement made between the parties on October 31, 1978.

10. Upon the debtor's failure to comply with the term of the agreement which required it to pay $25,000 to the plaintiff no later than April 1, 1979, the foreclosure sale was scheduled for June 8, 1979. At the request of the debtor, the sale was postponed until June 28, 1979.

11. On June 27, 1979 the debtor obtained an order from the Supreme Court of the State of New York, Nassau County, temporarily staying the foreclosure sale.

12. An application made by the debtor to stay the sale was denied by order of Hon. Victor J. Orgera, Supreme Court of the State of New York, Suffolk County, dated August 1, 1979.

13. The foreclosure sale was rescheduled for September 13, 1979. However, on September 11, 1979 the debtor filed its petition for an arrangement pursuant to Chapter XII of the Bankruptcy Act.

14. On March 3, 1980, the debtor filed its proposed plan of arrangement which provides for the payment of the first two mortgages in full over a period of three years with interest at the rate of 7½% per annum. The plaintiff, as first mortgagee, has rejected this offer in no uncertain terms.

15. The debtor's expert testified that the unimproved parcels in question are worth $1,400,000 "as is", and that if an additional $400,000 were invested to construct a road, curbing and necessary utility lines on the premises, the site, as improved property, would be worth $2,340,000.

16. The plaintiff's expert valued the site at $1,254,000 on an "as is" basis. He concluded that the cost of constructing a road, curbing and utility lines would be $360,000, which he deducted from the present value of the land and arrived at a value of $895,000 which he regarded as the value of the unimproved property.

17. However, the court must determine the value of the property in its present posture, and not how much it might be worth if there were available funds which someone might wish to invest in this property to change its present character to that of improved property. Accepting for the

moment the debtor's value of $1,400,000, it is admitted that the seven mortgages against the property in question aggregate $1,200,000. As of January 2, 1980, the unpaid taxes on this property amount to in excess of $270,000, resulting in a total secured indebtedness of in excess of $1,470,000. Accordingly, accepting without dispute the debtor's own present value figures, it is clear that the debtor lacks any equity in the property in question.

18. This court may take judicial notice of the fact that the current prime rate for money is 19% and that U. S. Treasury notes and bills are yielding approximately 15%.

19. The debtor's proposal to pay the plaintiff's first mortgage indebtedness in full over a period of three years after confirmation at some time in the future at an interest rate of 7½% per annum does not adequately protect the plaintiff or offer the plaintiff the "indubitable equivalent" of the value of its property interest. Had it not been for the delay caused by this Chapter XII case, the plaintiff would have been able to proceed with its foreclosure sale and reinvest the proceeds at current interest rates which now far exceed the rate that the plaintiff is offered under the plan of arrangement. Hence, this court could not enter an order confirming the debtor's plan because it does not provide adequate protection or compensation to the plaintiff as required under § 461(11) of the Bankruptcy Act of 1898.

20. The continuation of the automatic stay will cause substantial harm to the plaintiff.

## DISCUSSION

It defies the imagination to ruminate over how many more cookies the Girl Scouts must sell to offset the drain on their investment portfolio caused by the unproductive first mortgage on the debtor's vacant site now held by them in this Chapter XII case. Their due diligence resulted in a state court order of foreclosure originally scheduled for sale on November 2, 1978. The debtor now importunes this court to direct that the Girl Scouts also exercise the commendable virtue of patience while it invokes the blessings of the automatic stay under Bankruptcy Rule 12–43 to scout out the financial possibilities of improving and then selling approximately 70 acres of vacant land in Suffolk County, New York, in which the debtor has no current equity. Notwithstanding the charge of bad faith, the debtor earns no Brownie points for having filed its Chapter XII petition in good faith because this court's determination rests on other grounds.

The Girl Scouts, as plaintiff in this adversary proceeding, have rejected the debtor's plan of full payment extended over a period of three years after confirmation, with interest at 7½% per annum. They wish instead to exercise their judicially approved right to foreclose on their judgment and reinvest their funds in more productive fashion at currently higher interest rates. Manifestly, a payment extended over three years after confirmation in the future, with interest at 7½% per annum is not "the indubitable equivalent" of payment in full upon confirmation, or with an extension at currently higher interest rates, as expressed by Judge Learned Hand in *In re Murel Holding Corp.*, 75 F.2d 941 (2d Cir. 1935). The plan as contrived by the debtor could not possibly be confirmed because it does not provide the Girl Scouts with adequate protection for the realization by them of the value of their debt against the property dealt with by the arrangement within the meaning of § 461(11) of the Bankruptcy Act of 1898. This point was succinctly expressed by Judge Carter in *In re Schwab Adams Co.*, 463 F.Supp. 8, 12 (S.D.N.Y.1978) as follows:

"[3] Prudential, the first mortgagee, holds a mortgage that has already matured. A requisite to confirmation of a plan or arrangement under Chapter XII is that secured creditors affected be afforded adequate protection. When the value of the mortgaged premises exceeds the amount owed on the mortgage, the mortgagee is entitled to its principal and interest. See *Palo Alto Mutual Savings & Loan Ass'n v. Williams*, 245 F.2d 77, 78

(9th Cir. 1957). In short, in such circumstances the adequate protection afforded and required under the arrangement must be completely compensatory. *Rader v. Boyd,* 267 F.2d 911 (10th Cir. 1959); *In re Huntley Square Associates,* 2 Bankr.Ct.Dec. 1417 (D.Md.1976). There was no contention that the property is not sufficient in value to provide Prudential at a foreclosure sale with all principal and interest owed on the debt. Since the plan did not provide for payment in full or its indubitable equivalent to Prudential, it could not be confirmed. See *In re Nob Hill Apartments,* 2 Bankr.Ct.Dec. 1463 (N.D.Ga.1976); *In re Murel Holding Corp.,* 75 F.2d 941 (2d Cir. 1935). In lieu of full compensation or its equivalent, what was proposed was a further stretch out of the mortgage for ten more years at lowered interest rates and without the debtor investing any additional funds of its own. There is nothing to indicate that the debtor will be able ten years hence to retire the debt owed to Prudential. Such an arrangement has been held to be fatally defective because it allows the debtor to speculate with his creditor's funds. See *In re Huntley Square Associates,* supra."

In deciding to exercise the court's discretion to lift the stay under Bankruptcy Rule 12–43(d) for cause, namely lack of adequate protection of the Girl Scouts' secured interest, the court was mindful of the fact that their debt of approximately $400,000 is less than the value of the property. Thus, the cushion is sufficiently great as to enable the Girl Scouts to get paid in full on foreclosure. This is small comfort, however, to an investor who is locked in to an investment controlled by someone who has no equity in the property and who proposes to repay the debt over a period of time at substantially less than the current interest rate. The injustice of delay is further compounded by the fact that the possibility of improving the property in question and then the probability of finding purchasers ready, willing and able to purchase it so as to generate sufficient funds to satisfy the plan of arrangement appears to be remote and speculative.

The words of Judge Whelan in *In re Jenifer Mall Corp.,* 1 B.C.D. 179, 182 (D.D.C. 1974) aptly describe the situation in this case as follows:

"For this court to permit such a continuation, with a visionary expectation of improved business conditions . . . would clearly be an abuse of judicial discretion."

The Girl Scouts need not wait until the dawning of a new day and the reawakening of a slumbering, if not dormant real estate market, before they may realize a return on their investment.

### CONCLUSION OF LAW

Plaintiff is entitled to an order modifying the automatic stay so as to permit it to proceed with the sale of the real estate upon which it holds a first mortgage, pursuant to the judgment of foreclosure entered on August 31, 1978 in the Supreme Court of the State of New York, Suffolk County, and any subsequent orders of that court.

SETTLE ORDER on three (3) days' notice.