In the Matter of BURNT HILLS ASSOCIATES, a New Jersey Limited Partnership, Debtor.

CENTRAL SAVINGS BANK, Plaintiff-Appellee,

v.

BURNT HILLS ASSOCIATES, Debtor and Defendant-Appellant.

Bankruptcy No. 79–BK–814.

United States District Court, N. D. New York.

Feb. 28, 1980.

Stephan Garber, New York City, for defendant-appellant.

Cooper, Erving & Savage, Thomas M. Whalen, III, Albany, N. Y., for plaintiff-appellee.

McCURN, District Judge.

MEMORANDUM–DECISION AND ORDER

This proceeding for a real property arrangement under Chapter XII of the Bankruptcy Act of 1898, as amended, is before the Court on an appeal by the debtor from an Order entered by the Bankruptcy Judge on November 5, 1979, dismissing debtor's petition and vacating all stays and injunctive processes then in effect against Central Savings Bank.[1]

The primary issue on this appeal is whether a Chapter XII plan of arrangement may be confirmed over the objection of a sole secured creditor through application of the "cram-down" provision of Section 461(11) of the Bankruptcy Act of 1898, as amended. (formerly at 11 U.S.C. § 861(11)) In his Order of November 5, 1979, Judge Mahoney of the Bankruptcy Court, having determined that it could not,

1. In the statement of the record and issues on appeal prepared by the debtor's counsel pursuant to Rule 806 of the Bankruptcy Rules, the propriety of the Bankruptcy Judge's Order of May 18, 1979, leaving the state appointed receiver in possession of debtor's property, is listed as an issue on this appeal.

However, the Notice of Appeal, filed by the debtor, indicates that only the November 5, 1979, Order is being appealed, and that is the only Order which will be reviewed by this Court.

ordered dismissal of the debtor's Chapter XII proceeding. That Order is hereby affirmed for the following reasons.

## I

The debtor, Burnt Hills Associates, is a limited partnership whose sole asset is the Grand Union Shopping Center located in Ballston Spa, New York. Burnt Hills Associates acquired the center from J.E.H. Development Company, which had on April 16, 1973, executed a mortgage in the amount of $625,000 on the property to the New Jersey Mortgage Company. Debtor allowed the mortgage to go into default in August of 1978 and no payments have been made since. On December 27, 1978, United Jersey Mortgage Company commenced a foreclosure action in State Supreme Court in Saratoga, New York. The unpaid principal due at that time was $613,638.84 with interest accruing at the rate of 9¼% per annum.

On January 9, 1979, United Jersey Mortgage Company assigned its interest in the mortgage, with the exception of a 5% participating interest which it retained, to appellee Central Savings Bank.[2] On April 23, 1979, while a motion for summary judgment was pending in the foreclosure action, the debtor filed a Chapter XII petition for a real property arrangement, resulting in a stay of the foreclosure action.[3]

The debts listed by Burnt Hills Associates consist of two priority creditors representing town and school taxes in the amount of $25,936.46; the second mortgage debt in the amount of $613,638.86; and two unsecured debts for snow removal and construction work totaling $85,000.

The plan of arrangement submitted by the debtor provided for four classes of creditors. Class I consisted of the two priority tax claims which were to be paid in full upon confirmation of the plan. The sole member of Class II was the United Jersey Mortgage Company, listed as a secured creditor by virtue of its 5% participating interest in the mortgage assigned to Central Savings Bank. Class III consisted of Central Savings Bank.

Pursuant to the plan, the mortgage and lien of the Class II and III creditors would be:

"recast and modified to provide $325,000 plus $30,000 representing all unpaid interest, constituting in all $355,000 as principal and 8% per annum as interest; said mortgage debt shall be serviced by monthly constant payments of $2,662.50 ($31,950—9% per annum of $355,000) first to be applied to interest at 8% per annum as aforesaid and the balance to principal for a period of 10 years after confirmation at which time the full principal balance shall be due and payable."

In the alternative, the debtor proposed utilization of Section 461(11)(c) of the Bankruptcy Act of 1898, as amended, to provide adequate protection for the secured creditor through appraisal and payment of the cash value of the debt. Although the debtor has valued the property at $300,000 and Central Savings Bank has alleged that the property is in a deteriorating state, no appraisal hearing has been held to determine the value of the property for application of Section 461(11)(c).

Class IV was made up of the unsecured creditors who pursuant to the plan were to receive 10% of their respective debts in a lump sum payment.

---

**2.** Debtor's plan of arrangement puts United Jersey Mortgage Company and Central Savings Bank in separate classes as secured creditors, thus giving this case the appearance of a two-secured creditor case.

However, there is only one secured debt, the mortgage of which United Jersey Mortgage Company has only a 5% participating interest, and both Judge Mahoney and the parties herein have treated this as a sole-secured creditor situation, often using the two lending groups interchangeably. The Court does not object to treatment of the case as a sole-secured creditor case, and in any event does not believe that the result would be any different if the two lending groups were treated as separate secured creditors.

**3.** Summary Judgment was granted in the foreclosure action on May 3, 1979. A foreclosure sale was scheduled for February of 1980, but this Court granted a stay of the sale pending a determination of this appeal.

Central Savings Bank rejected the debtor's plan of arrangement on September 5, 1979, and in July of 1979 sought an order dismissing the debtor's petition and vacating the stay of the foreclosure action. It is from Judge Mahoney's Order granting such relief that the debtor now appeals.

## II

Debtor argued unsuccessfully below that although Central Savings Bank had rejected the plan of arrangement, it should be confirmed by the Bankruptcy Court, since the plan offered adequate protection to Central pursuant to Section 461(11)(c).

In a Chapter XII proceeding, the debtor must file a plan of arrangement for dealing with its debts. Section 461 of the Bankruptcy Act of 1898, as amended, sets forth the requirements for the plan. Confirmation in situations in which consent is not unanimous is controlled by Section 468 of the Act which provides in part that an application for confirmation may be filed only after:

"(1) it has been accepted in writing by the creditors of each class holding two-thirds in amount of the debts of such class affected by the arrangement . . exclusive of creditors or of any class of them who are not affected by the arrangement or for whom payment or protection has been provided as prescribed in paragraph (11) of section 861 of this title."

Section 461(11) formerly at 11 U.S.C. § 861(11), provides that a plan of arrangement under Chapter XII:

"(11) shall provide for any class of creditors which is affected by and does not accept the arrangement by the two-thirds majority in amount required under this chapter, adequate protection for the realization by them of the value of their debts against the property dealt with by the arrangement and affected by such debts, either, as provided in the arrangement or in the order confirming the arrangement, (a) by the transfer or sale, or by the retention by the debtor, of such property subject to such debts; or (b) by

a sale of such property free of such debts, at not less than a fair upset price, and the transfer of such debts to the proceeds of such sale; or (c) by appraisal and payment in cash of the value of such debts; or (d) by such method as will, under and consistent with the circumstances of the particular case, equitably and fairly provide such protection."

Commonly referred to as a "cram-down" provision, Section 461(11) permits a plan to be confirmed over the rejection of a class of creditors, provided the plan adequately protects the value of the dissenting creditor's claim through one of the methods set forth in the section.

There has been a great deal of debate concerning whether "cram-down" may be applied to allow confirmation in situations where there are no secured creditors accepting the plan. The controversy is greatest in sole secured creditor situations such as presented herein. Chapter XII of the Bankruptcy Act of 1898, as amended, provides no answer. Courts have been sharply divided on the issue in recent years.

At one extreme, courts have taken the position that if there are no secured creditors who have accepted the plan, "cram-down" may not be used to confirm the plan. See *Gardens of Cortez v. John Hancock Mut. Life*, 585 F.2d 975 (10th Cir. 1978); *Taylor v. Wood*, 458 F.2d 15 (9th Cir. 1972); *In re Herweg*, 119 F.2d 941 (7th Cir. 1941); *Kyser v. MacAdam*, 117 F.2d 232 (2d Cir. 1941); *In re Schwab Adams Co.*, 463 F.Supp. 8 (S.D.N.Y.1978); *In re Stillbar Construction Co.*, 4 Bankr.Ct.Dec. 452, aff'd 4 Bankr.Ct.Dec. 1110 (N.D.Ga.1978); *In re Spicewood Associates*, 445 F.Supp. 564 (N.D.Ill.1977). This position has been taken in sole secured creditor situations as well as those involving more than one secured creditor. See *Meyer v. Rowen*, 195 F.2d 263 (10th Cir. 1952); *In re Perimeter Park Investment Associates, Ltd.*, 1 Br. 473 (N.D. Ga.1979).

On the other side are cases involving sole secured creditor situations in which the courts have found that "cram-down" can be

applied in order to allow confirmation of a plan where there is a finding of adequate protection of the creditor's interests. See *In re Rainbow Tower Associates*, 5 Bankr. Ct.Dec. 493 (D.Kan.1979); *In re Marietta Cobb Apartments*, 3 Bankr.Ct.Dec. 720 (S.D. N.Y.1977); *In re Hobson Pike Associates*, 3 Bankr.Ct.Dec. 1205 (N.D.Ga.1977).

■ In this instance, the court concludes, as did Judge Mahoney, that although support can certainly be found for either position, that at least in the present situation, in which it is clear that the value of the property securing the debt is substantially less than the value of the debt to the sole secured creditor, and where the claim of the secured creditor constitutes a major portion of the outstanding debt, the "cram-down" provision should not be applied to allow confirmation of the plan.

In reaching its conclusion, the Court adopts in part the reasoning of the Bankruptcy Court in *In re Stillbar Construction Co., supra*, which although a two-secured creditor case, offers sound rationale which this Court finds equally applicable to the present one-secured creditor situation.[4] See *In re Perimeter Park Investment Associates, Ltd., supra*, in which the Court applied *Stillbar* in a sole-secured creditor situation.

The Court in *Stillbar*, after reviewing the decisions in *In re Herweg, supra, Meyer v. Rowen, supra*, and *Kyser v. MacAdam, supra*, concluded that the holdings in those early cases:

"that Section 461(11) is not to be a substitute for a plan of arrangement and that Section 461(11) may not, therefore, be used to 'cram-down' an acceptance of less than full payment on *all* of a Debtor's secured creditors, are still viable today." 4 Bankr.Ct.Dec. at 454.[5]

■ As Judge Mahoney indicated in his opinion below, Section 461(11) is merely an alternative available in a real property arrangement to foreclose a recalcitrant creditor from preventing confirmation of an otherwise acceptable plan. As such, this Court does not believe that it should become a virtual substitute for an arrangement, nor does the Court believe that Congress could have intended such a result.

■ Although it is not clear in this case whether the unsecured creditors accepted or rejected the plan, the acceptance of the unsecured creditors alone would in any event be insufficient to compel confirmation. *Kyser v. MacAdam, supra.*

As the Court stated in *Stillbar*:

"control of a Chapter XII proceeding should not be placed in the hands of unsecured creditors. Chapter XII was designed to simultaneously afford a debtor temporary relief from the pressures of its secured creditors and yet protect and safeguard the interests of those secured creditors. . . . The intended protection of secured creditor interests is seriously diminished if the impact of secured creditor vote on a Chapter XII Plan is subordinated to the impact of unsecured creditor vote." 4 Bankr.Ct.Dec. at 455.

---

4. Although *In re Stillbar Construction Co.*, obviously falls within the category of cases barring application of "cram-down" where no secured creditors have accepted the plan, the Court notes that the reasoning in *Stillbar* is not actually much different from that in the cases in which "cram-down" is allowed if adequate protection is provided the creditor. In finding that a Chapter XII plan of arrangement cannot be confirmed over the unanimous objection of the secured creditors, when the result would be payment to the secured creditors of less than the full amount of their debts and the debtor left in possession of its property free and clear, the Court, in effect, seems to be saying that under such circumstances, a finding of adequate protection simply could not be made.

5. Courts and various commentators have suggested that the pre-1952 Chapter XII "cram-down" cases must be re-evaluated in light of the 1952 amendments to Chapter XII eliminating the "absolute priority doctrine" and the "fair and equitable" requirement. See, e. g., Note, *From Debtor's Shield to Creditor's Sword: Cram Down Under the Chandler Act and the Bankruptcy Reform Act*, 44 Chicago-Kent L.Rev. 713 (1979); *In re Hobson Pike, supra* at 354.

The Court, however, having re-evaluated those cases, is not convinced that their holdings were dependent upon the existence of either the absolute priority rule or the fair and equitable standard.

Furthermore, as pointed out by that Court, the term "arrangement" is defined for purposes of Chapter XII at Section 406 as:

"(1) . . . any plan which has for its primary purpose the alteration or modification of the rights of creditors or of any class of them, holding *debts secured by real property* or a chattel real of which the debtor is the legal or equitable owner." (emphasis supplied)

Section 461(1) provides in part that an arrangement:

"(1) shall include provisions modifying or altering the rights of creditors who hold *debts secured by real property* . . ." (emphasis supplied)

It is thus clear that a plan of arrangement must deal with secured debt. Therefore, it is hard to understand how a situation in which none of the secured debt is treated through the plan can be said to comply with the intent of Chapter XII. Application of "cram-down" in this case would result in confirmation of a plan which has no affect on the sole secured creditor except to trigger utilization of the "cram-down" procedure.

In the cases allowing "cram-down" under circumstances similar to the present one, it has been argued that it is necessary to allow "cram-down" in situations involving a sole secured creditor although it might not be allowed with several dissenting creditors, in order to avoid "the happenstance of one dissenting mortgagee, who, for whatever reasons motivates him, fair or foul, will no longer deal with the (debtor)." *In re Marietta Cobb Apartments Co., supra*, at 722.[6]

However, it is the opinion of the Court that in situations like this one in which the value of the security is substantially less than the value of the debt, concern in that direction is clearly misplaced. Rather, the Court should consider whether Congress

could have intended a lender to assume the entrepreneurial risk of a limited partnership's business venture, whether for tax purposes or otherwise, thereby ending up with substantially less than the value of its debt, while the debtor is allowed to retain the real property free and clear of its obligations to the creditor. This Court is not prepared to attribute such an intent to Congress, nor is it willing to find that "cram-down" should be applied in this case.[7]

### III

For the foregoing reasons, the November 5, 1979, Order of the Bankruptcy Court, dismissing debtor's Chapter XII petition and vacating the stay of the State Court foreclosure action is affirmed and the stay of foreclosure sale granted by this Court on February 14, 1980, is hereby lifted.

SO ORDERED.

---

**6.** See also *In re Schwab Adams Co., supra* at 11, where in referring to the different treatment afforded a sole secured creditor situation in *Marietta Cobb*, the Court stated that "there may be policy considerations which render an interpretation consistent with congressional purpose in enacting the legislation."

**7.** Having affirmed Judge Mahoney's Order on the issue of the application of "cram-down" in a sole secured creditor case, the Court need not address the issue of application of Section 517 of the Bankruptcy Act of 1898, as amended, in this appeal.