In the Matter of VILLAGE I APARTMENTS ASSOCIATES, Debtor.

VILLAGE I APARTMENTS ASSOCIATES, Debtor-Appellant,

v.

CHEMICAL BANK, Appellee.

Bankruptcy No. 79–BK–807.

United States District Court, N. D. New York.

Feb. 29, 1980.

---

**6.** See also *In re Schwab Adams Co., supra* at 11, where in referring to the different treatment afforded a sole secured creditor situation in *Marietta Cobb,* the Court stated that "there may be policy considerations which render an interpretation consistent with congressional purpose in enacting the legislation."

O'Connell & Aronowitz, Daniel M. Sleasman, Albany, N. Y., for debtor-appellant.

Zalkin, Rodin & Goodman, Richard A. Gerard, New York City, for appellee.

McCURN, District Judge.

## MEMORANDUM–DECISION AND ORDER

This proceeding for a real property arrangement under Chapter XII of the Bankruptcy Act of 1898, as amended, is before the Court on an appeal by the debtor from an Order entered by the Bankruptcy Judge on October 25, 1979, granting Chemical Bank's motion to dismiss debtor's petition and vacating all stays then in effect and denying debtor's cross-motion for confirmation of its plan of arrangement, for a hearing on the application for confirmation pursuant to Rule 12–38(a) and for a hearing pursuant to Section 461(11) of the Bankruptcy Act of 1898, as amended.[1]

The primary issue on this appeal is whether a Chapter XII plan of arrangement may be confirmed over the objection of a sole secured creditor through application of the "cram-down" provision of Section 461(11) of the Bankruptcy Act of 1898, as amended. (formerly at 11 U.S.C. § 861(11)) In his order entered October 25, 1979, Judge Mahoney of the Bankruptcy Court, determining that it could not, ordered dismissal of the debtor's Chapter XII proceeding. That order is affirmed for the following reasons.

### I

The debtor, Village I Apartments Associates, is a New York limited partnership whose sole asset is a garden apartment complex containing 320 rental units, located in the Village of Menands, New York. The complex is encumbered by a construction loan mortgage resulting in an indebtedness to Chemical Bank in the principal sum of $5,700,000 plus accrued interest of approximately $1,000,000.

Subsequent to debtor's default on the mortgage in 1975, Chemical Bank brought a foreclosure action in State Supreme Court, and on February 14, 1977, a receiver was appointed. On April 27, 1978, while a motion for summary judgment by Chemical Bank was pending in the state foreclosure action, the debtor filed a Chapter XII petition for a real property arrangement, resulting in a stay of the foreclosure action.

---

1. In the October 24, 1979, Order, the Bankruptcy Judge also denied a cross-motion by Chemical Bank for alternative relief confirming a plan of arrangement which it had submitted. There is no appeal from that portion of the Order before the Court at this time.

In addition to the secured claim of Chemical Bank, debtor has unsecured debts totalling less than $7,000. The plan of arrangement submitted by the debtor provided for three classes of creditors—Class 1 to include all priority claims, if any, against the debtor; Class 2 to include Chemical Bank as the sole secured creditor; and Class 3 to consist of all unsecured creditors.

Pursuant to the plan, all priority creditors were to be paid in full. Chemical Bank was given two options for satisfaction of its claims, one which provided for a cash payment of $3,100,000 approximately 180 days after the effective date of the plan, and another which provided for cash payment of $2,900,000 approximately 180 days after the effective date of the plan with the bank maintaining a second mortgage on the property in the principal amount of $400,-000 to be subordinated to any new mortgage which might be obtained by the debtor. The second mortgage was due and payable upon the sale of the property or on December 31, 1985, whichever occurred first.

The unsecured creditors were to receive 75% of the principal balance of their debts, exclusive of interest accrued but not paid, late charges or penalties. The plan also proposed utilization of Section 461(11) of the Bankruptcy Act of 1898, as amended, to provide adequate protection for any class of creditors rejecting the plan of arrangement.

Chemical Bank rejected the plan and on March 29, 1979, filed a motion seeking dismissal of the Chapter XII proceeding on the basis of rejection of the plan by the sole secured creditor. On June 15, 1979, the debtor cross-moved for confirmation of the plan, for a hearing pursuant to Rule 12–38(a) upon the application for confirmation and for a hearing under Section 461(11) to determine the value of the property. It is from Judge Mahoney's Order granting the relief sought by Chemical Bank and denying the debtor's motion that debtor appeals.

Debtor argued unsuccessfully below that Chemical Bank's rejection of the plan did not require dismissal of the proceeding, but rather that the plan should be confirmed by the Bankruptcy Court upon a showing of adequate protection to the Bank for the realization of the value of its debt pursuant to Section 461(11). Since the mortgage held by the Bank is a non-recourse loan, the value of the debt would, according to the debtor, be the value of the property securing the mortgage. Debtor submitted an appraisal valuing the property at $3,100,000. Chemical Bank fixed the value at closer to $4,800,000. Neither party suggested that the value of the property equalled the amount of the mortgage debt, and the debtor argued that by holding an appraisal hearing the value of the property and the Bank's debt could be determined so that adequate protection could be provided under Section 461(11)(c) and the plan confirmed by the Court.

## II

In a Chapter XII proceeding, the debtor must file a plan of arrangement for dealing with its debts. Section 461 of the Bankruptcy Act of 1898, as amended, sets forth the requirements for the plan. Confirmation in situations in which consent is not unanimous is controlled by Section 468 of the Act which provides in part that an application for confirmation may be filed only after:

"(1) it has been accepted in writing by the creditors of each class holding two-thirds in amount of the debts of such class affected by the arrangement . . . exclusive of creditors or of any class of them who are not affected by the arrangement or for whom payment or protection has been provided as prescribed in paragraph (11) of section 861 of this title."

Section 461(11) formerly at 11 U.S.C. 861(11), provides that a plan of arrangement under Chapter XII:

"(11) shall provide for any class of creditors which is affected by and does not accept the arrangement by the two-thirds majority in amount required under this chapter, adequate protection for the realization by them of the value of their debts against the property dealt with by

the arrangement and affected by such debts, either, as provided in the arrangement or in the order confirming the arrangement, (a) by the transfer or sale, or by the retention by the debtor, of such property subject to such debts; or (b) by a sale of such property free of such debts, at not less than a fair upset price, and the transfer of such debts to the proceeds of such sale; or (c) by appraisal and payment in cash of the value of such debts; or (d) by such method as will, under and consistent with the circumstances of the particular case, equitably and fairly provide such protection."

Commonly referred to as a "cram-down" provision, Section 461(11) permits a plan to be confirmed over the rejection of a class of creditors, provided the plan adequately protects the value of the dissenting creditor's claim through one of the methods set forth in the section.

There has been a great deal of debate concerning whether "cram-down" may be applied to allow confirmation in situations where there are no secured creditors accepting the plan. The controversy is greatest in sole secured creditor situations such as presented herein. Chapter XII of the Bankruptcy Act of 1898, as amended, provides no answer. Courts have been sharply divided on the issue in recent years.

At one extreme, courts have taken the position that if there are no secured creditors who have accepted the plan, "cram-down" may not be used to confirm the plan. See *Gardens of Cortez v. John Hancock Mut. Life*, 585 F.2d 975 (10th Cir. 1978); *Taylor v. Wood*, 458 F.2d 15 (9th Cir. 1972); *In re Herweg*, 119 F.2d 941 (7th Cir. 1941); *Kyser v. MacAdam*, 117 F.2d 232 (2d Cir. 1941); *In re Schwab Adams Co.*, 463 F.Supp. 8 (S.D.N.Y.1978); *In re Stillbar*

*Construction Co.*, 4 Bankr.Ct.Dec. 452, aff'd. 4 Bankr.Ct.Dec. 1110 (N.D.Ga.1978); *In re Spicewood Associates*, 445 F.Supp. 564 (N.D.Ill.1977). This position has been taken in sole secured creditor situations as well as those involving more than one secured creditor. See *Meyer v. Rowen*, 195 F.2d 263 (10th Cir. 1952); *In re Perimeter Park Investment Associates, Ltd.*, 5 BCD 730 (N.D. Ga.1979).

On the other side are cases involving sole secured creditor situations in which the courts have found that "cram-down" can be applied in order to allow confirmation of a plan where there is a finding of adequate protection of the creditor's interests. See *In re Rainbow Tower Associates*, 5 Bankr. Ct.Dec. 493 (D.Kan.1979); *In re Marietta Cobb Apartments*, 3 Bankr.Ct.Dec. 720 (S.D. N.Y.1977); *In re Hobson Pike Associates*, 3 Bankr.Ct.Dec. 1205 (N.D.Ga.1977).

■ In this instance, the court concludes that although support can certainly be found for either position, in the present situation, in which it is clear that the value of the property securing the debt is substantially less than the value of the debt to the sole secured creditor, and where the claim of the secured creditor constitutes a major portion of the outstanding debt, the "cram-down" provision should not be applied to allow confirmation of the plan.

In reaching its conclusion, the Court adopts in part the reasoning of the Bankruptcy Court in *In Re Stillbar Construction Co., supra*, which although a two-secured creditor case, offers sound rationale which this Court finds equally applicable to the present one-secured creditor situation.[2] See *In re Perimeter Park Investment Associates, Ltd., supra*, in which the Court applied *Stillbar* in a sole-secured creditor situation.

---

2. Although *In re Stillbar Construction Co.*, obviously falls within the category of cases barring application of "cram-down" where no secured creditors have accepted the plan, the Court notes that the reasoning in *Stillbar* is not actually much different from that in the cases in which "cram-down" is allowed if adequate protection is provided the creditor. In finding that a Chapter XII plan of arrangement cannot

be confirmed over the unanimous objection of the secured creditors, when the result would be payment to the secured creditors of less than the full amount of their debts and the debtor left in possession of its property free and clear, the Court, in effect, seems to be saying that under such circumstances, a finding of adequate protection simply could not be made.

The Court in *Stillbar* after reviewing the decisions in *In re Herweg, supra, Meyer v. Rowen, supra,* and *Kyser v. MacAdam, supra,* concluded that the holding in those early cases:

"that Section 461(11) is not to be a substitute for a plan of arrangement and that Section 461(11) may not, therefore, be used to 'cram-down' an acceptance of less than full payment on *all* of a Debtor's secured creditors, are still viable today." 4 Bankr.Ct.Dec. at 454.[3]

■ As Judge Mahoney indicated in his opinion below, Section 461(11) is merely an alternative available in a real property arrangement to foreclose a recalcitrant creditor from preventing confirmation of an otherwise acceptable plan. As such, this Court does not believe that it should become a virtual substitute for an arrangement, nor does the Court believe that Congress could have intended such a result.

■ Acceptance of the unsecured creditors alone would be insufficient to compel confirmation. *Kyser v. MacAdam, supra.*

As the Court stated in *Stillbar*:

"control of a Chapter XII proceeding should not be placed in the hands of unsecured creditors. Chapter XII was designed to simultaneously afford a debtor temporary relief from the pressures of its secured creditors and yet protect and safeguard the interests of those secured creditors. . . . The intended protection of secured creditor interests is seriously diminished if the impact of secured creditor vote on a Chapter XII Plan is subordinated to the impact of unsecured creditor vote." 4 Bankr.Ct.Dec. at 455.

Furthermore, as pointed out by that Court, the term "arrangement" is defined for purposes of Chapter XII at Section 406 as:

"(1) . . . any plan which has for its primary purpose the alteration or modification of the rights of creditors or of any class of them, holding *debts secured by real property* or a chattel real of which the debtor is the legal or equitable owner." (emphasis supplied)

Section 461(1) provides in part that an arrangement:

"(1) shall include provisions modifying or altering the rights of creditors who hold *debts secured by real property . . .*" (emphasis supplied)

It is thus clear that a plan of arrangement must deal with secured debt. Therefore, it is hard to understand how a situation in which none of the secured debt is treated through the plan can be said to comply with the intent of Chapter XII. Application of "cram-down" in this case would result in confirmation of a plan which has no affect on the sole secured creditor except to trigger utilization of the "cram-down" procedure.

In the cases allowing "cram-down" under circumstances similar to the present one, it has been argued that it is necessary to allow "cram-down" in situations involving a sole secured creditor although it might not be allowed with several dissenting creditors, in order to avoid "the happenstance of one dissenting mortgagee, who, for whatever reason motivates him, fair or foul, will no longer deal with the (debtor)." *In re Marietta Cobb Apartments Co., supra* at 722.[4]

However, it is the opinion of the Court that in situations like this one in which

---

**3.** Courts and various commentators have suggested that the pre-1952 Chapter XII "cram-down" cases must be re-evaluated in light of the 1952 amendments to Chapter XII eliminating the "absolute priority doctrine" and the "fair and equitable" requirement. See, e. g., Note, *From Debtor's Shield to Creditor's Sword: Cram Down Under the Chandler Act and the Bankruptcy Reform Act,* 44 Chicago-Kent L.Rev. 713 (1979); *In re Hobson Pike, supra* at 354.

The Court, however, having re-evaluated those cases, is not convinced that their holdings were dependent upon the existence of either absolute priority rule or the fair and equitable standard.

there is a non-recourse mortgage and the value of the property is substantially less than the value of the debt, concern in that direction is clearly misplaced. Rather, the Court should consider whether Congress could have intended a lender to assume the entrepreneurial risk of a limited partnership's business venture, whether for tax purposes or otherwise, thereby ending up with substantially less than the value of its debt, while the debtor is allowed to retain the property free and clear of its obligations to the creditor. This Court is not prepared to attribute such an intent to Congress, nor is it willing to find that "cramdown" should be applied in this case.

### III

For the foregoing reasons, the October 25, 1979, Order of the Bankruptcy Court dismissing debtor's Chapter XII petition and vacating the stay of the state foreclosure action and denying the relief sought in debtor's cross-motion is affirmed.

IT IS SO ORDERED.