FAY, Circuit Judge:
This is an appeal from the district court’s affirmance of an order of the United States Bankruptcy Court for the Northern District of Georgia, dated July 31, 1980, confirming the amended plan of arrangement proposed by Perimeter Park Investment Associates, Ltd., (hereinafter the “Debtor” or “Perimeter”), pursuant to the provisions of Chapter XII of the Bankruptcy Act of 1892, as amended, 11 U.S.C.A. §§ 801 et seq. (the “Bankruptcy Act”). Perimeter is a limited partnership that owns and operates an office park located in DeKalb County, Georgia. Acacia Mutual Life Insurance Co. (hereinafter “Acacia” or “Secured Creditor”) is the sole secured creditor of Perimeter, holding well over 90% of Perimeter’s outstanding debts. Acacia’s appeal requires this court to decide two related issues: (1) whether the district court erred in affirming the bankruptcy court’s confirmation of the Debtor’s amended plan of arrangement over the objection of the Debtor’s sole secured creditor; and, (2) whether the district court erred in affirming the bankruptcy court’s determination that the Debtor’s amended plan of arrangement provided adequate protection to the Secured Creditor under § 461(11), 11 U.S.C. § 861(11), of the Act.
We resolve both of these issues against the Secured Creditor and affirm the district court.
I.
The following is an outline of the facts material to the issues presented in this appeal. The facts are largely taken from the district court’s order of April 14, 1981, which summarizes the extensive statement of facts and procedural history found in the bankruptcy court’s order of July 31, 1980.
This case began on September 15, 1977 when a Chapter XII petition was filed by the Debtor. Pursuant to an order of the bankruptcy court, the Debtor, a limited partnership consisting of twenty individuals, has been operating an office park as a debtor-in-possession since the inception of this case. The office park was purchased from Mr. Shouky A. Shaheen, a limited partner in Perimeter. At the time of the purchase, the Debtor agreed to assume all of the obligations of Mr. Shaheen under a deed to secure debt which conveyed the office park to the Draper Owens Co. as security for a loan. The security deed was eventually assigned to the Secured Creditor, the sole secured creditor involved in this case holding well over 90% of the Debtor’s outstanding debt (the remaining creditors consist of small unsecured claims of utility companies and trade creditors and a $20,-000. claim of Mr. Shaheen individually on a note executed by the Debtor).
When making its decision on confirmation, the bankruptcy court was faced with two proposed plans of arrangement, one each submitted by the Secured Creditor and by the Debtor. The similarity in the terms of the two proposed plans is what forms the unusual nature of this bankruptcy proceeding.
In its final form, Acacia’s proposed plan of arrangement gave the Debtor until December 1, 1978 to select from several alternatives which supposedly would allow the Debtor to retain an interest in the property. The plan stipulated that upon failure of the Debtor to timely select from the proposed alternatives, the property would be offered for sale to a third-party purchaser on at least the same minimum terms offered the Debtor.
In fact, Acacia procured a contract for sale of the property to a third party, executed before the December 1, 1978 deadline given the Debtor and subject to the approval of the bankruptcy court. The contract provided for the sale of the property to General Realty Services, Inc. for $2,525,000., $225,000.00 cash at closing and a note in the amount of $2,300,000.00 yielding interest at 8I. ******8/s% and based upon an amortization period of 27 years.
The Debtor did not elect any of the alternatives in Acacia’s amended plan of arrangement, rather it filed objections to the bankruptcy court’s consideration of such plan; consequently, the Debtor was granted *947 leave to amend its own plan of arrangement.
The Debtor’s amended plan provided that the Debtor would meet the terms of the contract of sale between the Secured Creditor and General Realty Services. The Debt- or’s plan also provided that the unsecured creditors would receive 100% of the amount of their allowed claims, as was also provided by Acacia’s proposed plan.
At a confirmation hearing on December 4, 1979, Acacia submitted an amendment to its contract of sale with General Realty Services, Inc. (upon which its plan of arrangement was based). The amendment increased from $2,525,000.00 to $2,725,-000. 00 the amount of the purchase price which would be paid by General Realty Services, Inc. (and by American Canadian Properties, Ltd. which had been brought in as a 75% participant in the contract of sale in a previous amendment). Other changes contained in the amendment to the contract were as follows: (1) the amount of cash at closing was increased from $225,000.00 to $300,000.00; (2) the modified note was increased from $2,300,000.00 to $2,425,000.00; (3) the obligation of the Secured Creditor to advance for tenant improvements during the two years after closing was decreased from $150,000.00 to $100,000.00; and, (4) the date of closing was extended from May 15, 1980 to January 1, 1981, with the purchaser’s option to extend the closing from month to month up to June 30, 1981 by timely electing to do so with the purchase price being adjusted in accordance with increases in the consumer price index under a predetermined formula.
The Debtor sought leave of the bankruptcy court to amend its proposed plan of arrangement to conform to the provisions of Acacia’s new contract; leave was granted and the Debtor’s plan was amended.
At the close of the confirmation hearings, neither the Debtor nor the Secured Creditor’s plan was accepted by all the creditors. The bankruptcy court announced, however, that it would confirm the amended plan proposed by the Debtor. On July 31, 1980, the bankruptcy court entered its order of confirmation. The Secured Creditor appealed.[1]
II.
The threshold question raised by the facts of this case has been considered by various legal forums and has been the subject of judicial discord: whether a debtor’s Chapter XII plan of arrangement may be confirmed over the objection of its sole secured creditor through the use of the “cram-down” provision of section 461(11) of the Bankruptcy Act, 11 U.S.C. § 861(11). This issue is not explicitly covered by the provisions of Chapter XII. After careful consideration of the previous decisions of Chapter XII courts and the purposes and intent of said Chapter, this court agrees with both the bankruptcy judge and the district court judge’s determination that a Chapter XII plan of arrangement may be confirmed over the objection of a sole secured creditor.[2]
*948 In a confirmation proceeding, the debtor must file a plan of arrangement, restructuring his debts in order that he can pay his creditors. Section 461 of the Act delineates the requirements for the plan. Confirmation of plans in cases where consent is not unanimous is controlled by § 468 of the Act. Section 468 provides that if an arrangement has not been unanimously approved by the creditors, an application for confirmation may be filed only after the arrangement
has been accepted in writing by the creditors of each class, holding two-thirds in amount of the debts of such class affected by the arrangement proved and allowed before the conclusion of the meeting, or before such other time as may be fixed by the court, exclusive of creditors or of any class of them who are not affected by the arrangement or for whom payment or protection has been provided as prescribed in paragraph (11) of section 861 of this title.
Section 461(11), formerly at 11 U.S.C. § 861(11), prescribes that a Chapter XII plan of arrangement
shall provide for any class of creditors which is affected by and does not accept the arrangement by the two-thirds majority in amount required under [Chapter XII], adequate protection for the realization by them of the value of their debts against the property dealt with by the arrangement and affected by such debts, either, as provided in the arrangement or in the order confirming the arrangement, (a) by the transfer or sale, or by the retention by the debtor, of such property subject to such debts; or (b) by a sale of such property free of such debts, at not less than a fair upset price, and the transfer of such debts to the proceeds of such sale; or (c) by appraisal and payment in cash of the value of such debts; or (d) by such method as will, under and consistent with the circumstances of the particular case, equitably and fairly provide such protection.
Section 461(11), colloquially referred to as the “cram-down” provision,[3] permits a plan to be confirmed over the objection of a class of creditors, provided the plan adequately protects the values of the dissenting creditors’ claims through one of the methods set forth in the section.
Considerable debate has emerged over whether the “cram-down” provision may be applied to allow confirmation in situations where no secured creditors accept the plan of arrangement. “The controversy is greatest in sole secured creditor situations such as presented herein. Chapter XII ... provides no answers. Courts have been sharply divided on the issue.. . . ” In re Burnt Hills Associates, 3 B.R. 384, 386 (N.D.N.Y.1980).
At one extreme, courts have taken the position that if there are no secured creditors who have accepted the plan, “cram-down” may not be used to confirm the plan. See Gardens of Cortez v. John Hancock Mut. Life, 585 F.2d 975 (10th Cir.1978); Taylor v. Wood, 458 F.2d 15 (9th Cir.1972); In re Herweg, 119 F.2d 941 (7th Cir.1941); Kyser v. MacAdam, 117 F.2d 232 (2d Cir.1941); In re Schwab Adams Co., 463 F.Supp. 8 (S.D.N.Y.1978); In re Stillbar Construction Co., 4 Bankr. Ct.Dec. 452, aff’d 4 Bankr.Ct.Dec. 1110 (N.D.Ga.1978); In re Spicewood Associates, 445 F.Supp. 564 (N.D.Ill.1977). This position has been taken in sole secured *949 creditor situations as well as those involving more than one secured creditor. See Meyer v. Rowen, 195 F.2d 263 (10th Cir.1952); In re Perimeter Park Investment Associates, Ltd., 1 B.R. 473 (Bkrtcy.N.D.Ga.1979).
On the other side are cases involving sole-secured creditor situations in which the courts have found that “cram-down” can be applied in order to allow confirmation of a plan where there is a finding of adequate protection of the creditor’s interests. See In re Rainbow Tower Associates, 5 Bankr.Ct.Dec. 493 (D.Kan.1979); In re Marietta Cobb Apartments, 3 Bankr.Ct.Dec. 720 (S.D.N.Y.1977); In re Hobson Pike Associates, 3 Bankr.Ct.Dec. 1205 (N.D.Ga.1977).
Id. at 386-387.
In the instant case, we agree with both the bankruptcy judge and the district court judge, that although ample support can be found for either position, under the facts of this case____where the bankruptcy court at the confirmation hearing was faced with substantially identical plans of arrangement proposed by the Debtor and the Secured Creditor, both providing Acacia with nearly identical economic benefits, and the Debtor is attempting through its plan to pay the Secured Creditor the full value of its claim as determined by Acacia’s own actions in negotiating a binding contract of sale to an unrelated third party___the “cram-down” provision should be applied to allow confirmation of the Debtor’s plan.
On its face § 461(11) does appear to require a two-thirds acceptance of a debtor’s plan by a class of affected secured creditors before an arrangement can be crammed down the dissenting creditors. Relying on this kind of first blush reading of § 461(11), Acacia argues that the Debtor’s plan cannot be confirmed over the objection of its sole secured creditor because there are no other creditors affected by the plan who could accept. This argument, however, as noted by numerous cases, produces an absurd result:
It is also illogical ... that Section 461(11) may be utilized where a secured creditor rejects a plan and there are unsecured creditors who do not accept the plan, but not where the sole secured creditor rejects a plan, and no unsecured creditors affected by the plan exist. This result is particularly absurd because:
‘... it is not terribly difficult for the enterprising real estate debtor to incur other creditor obligations, perhaps even resulting in secondary and mechanics or materialmen’s liens on the property. The reorganization plan can propose payment of all or part of these claims in cash, assuring the favorable votes of those classes.’ Lifton, Real Estate in Trouble, 31 Bus.Law, 1927, 1968 (1976).
In re Mallard Associates, 475 F.Supp. 1045, 1052 (1979).
If the meaning spontaneously yielded by Section 461(11) is as the cited cases took it to be, then there can be no Chapter XII case where, as here, the sole secured creditor rejects the debtor’s plan. And, moreover, a secured creditor, unlike Caesar’s Gaul, cannot be divided into three parts to provide a two-thirds assent. Accordingly, as those cases would have it, the snug harbor of Chapter XII becomes unavailable to the harrassed real estate partnership or individual dealing with but one recalcitrant mortgagee, a fact of life in 1977 even if not in 1938. As Chapter X is unavailable because it deals with corporate debtors, as is Chapter XI because it is designed to deal with unsecured creditors, it follows that none of the debtor relief chapters of the National Act touching insolvency avails this debtor partnership in its hoped for dialogue with Mass. Mutual, its mortgagee.[4]
In re Marietta Cobb Apartments, 3 Bankr. Ct.Dec. 720, 722 (S.D.N.Y.1977); see also In re Hobson Pike Associates.
As aptly noted by the above cases, Congress in providing the debtor-relief aspects of Chapter XII did not intend to create the absurd result of leaving “a debtor subject to the happenstance of one dissenting mortgagee, who, for whatever reason motivates *950 him, fair or foul, will no longer deal with the former.” In re Marietta Cobb Apartments, at 722. For if such a result was intended, then it would invariably “negate the obvious import of Section 461(11) in the case, as here, where there is but one affected creditor who rejects the debtors offer ... It would foreclose Chapter XII as a vehicle for the rehabilitation of a debtor with one mortgagee—the norm in a large percentage of today’s cases.” Id., at 724.[4]
Further support for the position that the debtor-relief provisions of Chapter XII do not provide an individual creditor veto power over a debtor’s plan can be found in the legislative history of said Chapter. Chapter XII was enacted as one of the Chandler Act Amendments to the Bankruptcy Act of 1898.[5] The legislative hearings on Chapter XII[6] show that the reorganization-like relief provided by said Chapter was targeted at one or a class of secured creditors who *951 under previous legislation could thwart a non-corporate debtor’s hope of rehabilitation.
The testimony in these hearings evinces extreme congressional concern over the inability under the previous legislation to bind a secured creditor, particularly a sole mortgagee, to an arrangement without his consent. The remarks of W. Randolph Montgomery, Attorney for the National Association of Credit Men, typified the testimony concerning the problems caused by the pre1938 Bankruptcy Act’s inability to force secured creditors to accept a debtor’s plan:
I would like to add this to what Mr. Celler said: You probably recall one difficulty with 74 ... it attempt [sic] to deal with both secured and unsecured creditors, without a classification, and requires the consent of the majority in numbers and amount of these debtors’ and in the ordinary individual debtor’s case, his secured debt consists of a mortgage on his home. That is the debt which is the majority in amount of all his debts, but you cannot make the mortgagee come in, if he does not want to. Therefore, the unsecured creditors cannot do anything much after a veto of the secured creditor, if the debtor attempts to deal with both classes, which is sufficient to defeat any arrangement that he proposed under 74 at the present time. It has been absolutely ineffectual, as far as stopping foreclosure is concerned, and that is what it was adopted for.
Hearings on H.R. 6439 before the House Committee on the Judiciary, 8th Cong., 1st Sess. at 52 (1937).
As noted by the very able bankruptcy judge in the instant case, Congress in drafting Chapter XII, solved the problem of the non-consenting secured creditor by enacting § 461(11), which requires all Chapter XII plans to provide adequate protection to dissenting creditors so they will not have any right to thwart the debtor’s plan. “But Congress did not stop by enacting § 461(11). To guarantee the desired cram-down effect of Section 461(11), the Chapter XII draftsmen added a final clause to Section 468(1), which ... expressly provides that a dissenting creditor who is adequately protected under Section 461(11) is not to be included in the vote determining acceptance of the plan. The legislative intent, reflected in conference committee minutes, is clear. Once a creditor is adequately protected, it no longer can vote on or interfere with confirmation of the arrangement under Section 468(1). Its right to vote and to participate in the arrangement is traded for the more conservative and often safer guarantees of Section 461(ll)(a)-(d).” Bankruptcy Court’s Order of July 31,1980, at 85, (emphasis in original) (footnotes omitted).[7]
*952 Congress intended that § 461(11) be applied liberally. Thus in an attempt to remove a substantial obstacle to confirmation of a Chapter XII debtor’s plan through the use of the cram-down provision, Congress in 1952, remedied the problems created by the “fair and equitable” provision then found in Section 472(3) of the Bankruptcy Act, 11 U.S.C. § 872(3) (1950 ed.). The “fair and equitable” provision was eliminated because it could not “realistically be applied in a Chapter XI, XII or XIII proceeding. Were it so applied, no individual debtor could ... effectuate an arrangement except by payment of all creditors in full.” House Rep. No. 2320 on S. 2234, 82d Congr., 2d Sess. (1952).[8] “Not only did the elimination of the ‘fair and equitable’ rule facilitate confirmation in Chapter XII, but other language, also added in 1952, evidences Congressional concern with realizing the effectuation of an arrangement: ‘Confirmation of an arrangement shall not be refused solely because the interest of a debtor will be preserved under the arrangement.’ Section 472(5), 11 U.S.C. § 872(5).” In re Marietta Cobb Apartments Company, at 723.
“Without the constraints of the ‘fair and equitable test,’ Congress intended that a debtor could retain an interest even if the objecting creditors are not paid in full, provided that they are given adequate protection. Thus, we find that Congress intended that the key to confirmation is whether the objecting creditors receive adequate protection.” In re Mallard Associates, at 1045. “Congress was more concerned with the judicial determination of ‘adequate protection’ to be provided to the objecting secured creditor and for the debtor to be permitted to retain the real property after payment or provision for such ‘adequate protection,’ than with the acceptance process by non-affected creditors, or the existence of other creditors.” In re Hobson Pike Associates, at 363. As recognized by the court in In re Lamarche, 4 Bankr.Ct.Dec. 443, 443 (M.D.Fla.1978):
This Court rejects the contention that a sole secured creditor can defeat the plan of arrangement. ‘The true design of the Chapter XII statutory authority is not whether there are creditors to accept the plan in writing, but whether the plan provides the necessary “adequate protection” to the objecting creditor, as required by § 468(1) and 461(11) .. . ’ In re Hobson Pike Associates, Ltd., 3 Bankr.Ct. Dec. at 1212; see also, In re Marietta Cobb Apartments Co., Vol. 3 Bankr.Cf. Dec. at 720.
The examination of Chapter XII’s legislative history, the 1952 amendment, and cases construing § 461(11) and said section’s statutory predecessors demonstrate beyond peradventure that the debtor’s “[retention of [his] property is the statutory scheme of Section 461(ll)(c) and adequate protection, rather than consent, of the secured creditor is its keystone.” In re Pine Gate Associates, 10 C.B.C. 581, 602-603 (N.D.Ga.1976) (emphasis in original). Thus, a debtor can move for confirmation over the objection of the sole secured creditor so long as “adequate protection” is provided *953 the secured creditor by one of the means listed in § 461(H).[9]
Section 461(11) lists several ways in which “adequate protection” can be provided a creditor, the last of which states that adequate protection may be furnished “by such method as will, under and consistent with the circumstances of the particular case, equitably and fairly provide such protection.” § 461(ll)(d). 11 U.S.C. § 861(ll)(d). The district court agreed with the determination of the bankruptcy judge that the Debtor’s amended plan gives the Secured Creditor “adequate protection” under subsection (d) of § 461(11). The district court, adopting the rationale of the bankruptcy judge, held:
In the instant case, Acacia will be furnished ‘adequate protection’ under [subsection (d)] of § 461(11), because by agreeing to sell the property to a third party at ‘arm’s length negotiation,’ Acacia has itself established the value of the property on the present market. As the bankruptcy court states,
Its (Acacia’s) agreement to the purchase price and the terms of financing establishes its own view of its value, and hence, ‘adequate protection’. The Debtor’s plan which offers the same economic terms and payment conditions to the Secured Creditor, and, by evidence, greater proven financial and management resources for consummation of the plan, provides to Acacia the ‘adequate protection’ prescribed in § 461(11).
Order of Confirmation at page 43
The bankruptcy court further determined that the Debtor’s plan is in compliance with the requirements for confirmation listed in § 472 of the Act. After careful consideration, this Court concludes that the Debtor’s plan does meet the requirements for confirmation in § 472 for the reasons detailed in the bankruptcy court’s Order of Confirmation.
Order of the District Court, at 7.
Likewise, after careful consideration, we find no error in the district court’s conclusion that the bankruptcy court was correct in its determination that the Debt- or’s amended plan of arrangement provides Acacia substantially identical economic benefits and “adequate protection” as contemplated by § 461(ll)(d) of the Act.
*954 We opine that the issues raised on this appeal present exceedingly close questions. We also recognize the strong lines of authority supporting both parties’ position. We agree, however, with the bankruptcy court and the district court that disposition of the issues involved turns on the unusual facts of this case. We again emphasize that in this case the bankruptcy judge at the confirmation hearing was faced with two plans of arrangement, one each proposed by the Debtor and the Secured Creditor. Both plans provide the Secured Creditor with substantially identical economic benefits; the only material difference being that under the Debtor’s amended plan the Debtor will retain an interest in its property, while under the Secured Creditor’s plan, the Debtor will be liquidated and the property sold to an unrelated third party. Most important, the Debtor’s plan provides adequate protection to the Secured Creditor for the realization of the value of its debt as established by the Secured Creditor’s own actions in negotiating a binding contract of sale to an unrelated third party. In view of these facts and the federal policy favoring rehabilitation and reorganization of a debt- or’s business under the Bankruptcy Act over liquidation, we conclude that the district court did not err in affirming the bankruptcy court’s confirmation of the Debtor’s amended plan of arrangement.
AFFIRMED.

. Originally, Acacia took two appeals from two orders and judgments by the United States District Court for the Northern District of Georgia involving a proceeding under Chapter XII of the Bankruptcy Act. One appeal (under Docket No. 81-7352) is from an order dated April 14, 1981 (Record “R.”) Vol. 19, pp. 1464-1472; Record Excerpts (“R. Ex.”), p. 11), affirming an order of the bankruptcy court dated July 31, 1980 (R.Vol. 14, pp. 26-118; Appendix (“App.”) p. 11), which had confirmed an amended plan of arrangement proposed by the Debtor. One of the judgments appealed from (under Docket No. 81-7491) was entered on May 12, 1981 with respect to the April 14, 1981 order. (R.Vol. 19, p. 1490; R.Ex. p. 20). The other appeal (under Docket No. 81-7494) is from an order dated May 7, 1981 (R.Vol. 13, pp. 261-63; R.Ex. p. 21) and judgment entered May 8, 1981 (R.Vol. 13, p. 264; R.Ex. p. 24) affirming the order of the bankruptcy court dated July 30, 1980 (R.Vol. 12, pp. 13-15; App. p. 8) determining that the Appellee has no personal liability to Appellant on a note in the original principal amount of $2,500,000 that had been assumed by the Debtor when it acquired real property securing the note.
On the unopposed motion of Acacia, these appeals were consolidated in November, 1981.

. Acacia also asserts on appeal (1) that the bankruptcy court and the district court erred in holding that the language contained in the Warranty Deed and the Promissory Note in *948 volved with the syndication of the Debtor’s office park is insufficient to constitute a creation of personal liability by the Debtor partnership or its general partners; and, (2) that the conclusion of the bankruptcy court, not addressed by the district court, that Acacia was not an “affected” creditor and consequently that the Debtor’s plan could be confirmed under § 467 of the Bankruptcy Act is clearly erroneous. The district court expressly considered and rejected the first of these claims. We find the reasons given in th? court’s opinion to be adequate and correct. As to the second point, we have heard nothing that would even hint at reversible error, and wholly reject the argument.

. This provision is commonly referred to as the “cram-down” provision because it may be invoked to compel a creditor to be bound by an arrangement which the creditor is otherwise unwilling to accept.

 Chapter XIII, the wage-earner relief chapter, is not even arguably applicable.

. The reasoning of the court in In re Hobson Pike Associates, 3 Bankr.Ct.Dec. 1205 (N.D.Ga.1977) is also guiding in this instance:
Perhaps it could be argued in support of [sole secured creditor veto power] that Congress in enacting Chapter XII, contemplated only the normal situation of 1938 ... where the debtor is confronted with numerous creditors of the same class possessing varying viewpoints and positions incapable of attaining a consensus; and that § 461(11) was included to prevent an injustice against the debtor and the other minority creditors of that class which might result from the actions of the objecting majority of the creditors of that class. This argument is that a debtor may use § 461(11) to deal with a recalcitrant secured creditor holding a majority of the debt where the debtor has other minority creditors who would benefit by the plan; but that the debtor may not use § 461(11) to deal with that objecting secured creditor where the debtor has no other creditors.
This argument necessitates the position that Congress did not anticipate and had no intention to permit Chapter XII to become a vehicle for rehabilitation of the debtor’s business where the debtor was confronted with only one creditor or only secured creditors. This argument would be founded on the assumption that multiple secured creditors, not a single controlling secured creditor, was the prevailing or only known condition confronting debtors and bondholders, etc., when Congress enacted Chapter XII. This argument would require a holding that Congress intended Chapter XII to apply only to the business organization and lending conditions confronting it in 1937-38 upon consideration and enactment of Chapter XII, to wit: the business entity and lending practices existing at the time of enactment of the act limits the application of § 468 and § 461(11) some forty years later despite expansion of different business entities and practices engaging in real property ownership since 1938.
This argument is difficult to sustain in the face of the decision of the Supreme Court in Continental Illinois National Bank and Trust v. Chicago, Rock Island and Pacific Railway Co., 394 [294] U.S. 648 [55 S.Ct. 595, 79 L.Ed. 1110] (1934) [1935], which approved the constitutionality of § 77 of the Act. In that case, the creditors had argued that Congress was without the power to enact debtor relief provisions other than to provide for straight bankruptcy because straight bankruptcy was the only insolvency remedy known, available and anticipated at the time of the adoption of the Constitution in 1789. The Supreme Court rejected such argument and held that the bankruptcy power of Article I of the Constitution was not static, but a flexible power on which Congress could expand with statutes appropriate to the change of conditions of the times. Similarly, Chapter XII cannot be construed to apply only to the types of real entities and conditions existing in 1938. If the Chapter XII shoe fits under the conditions of today, it must be permitted to be worn.
Chapter XII and § 468 and § 461(11) must be read in this light to apply to the entities such as limited partnerships which now frequently hold one real estate project and have one secured creditor. It was the economic distress of the many Straus bond type debtors in the Great Depression of the mid-30’s which brought about the relief provided in Chapter XII. It is the economic distress of current limited partnerships and similar individual-type debtors, confronted with a similar economic depression, which brings the debtor today to the Bankruptcy Court for Chapter XII relief. The statute fits the partnership entity and this purchase money mortgage holder, now before the court.

. 52 Stat. 916 (1938).

. Revision of the National Bankruptcy Act, House of Representatives, Committee on the Judiciary, 75th Cong., 1st Sess., Report No. 1409, p. 51-52 (1937-1938), on HR 8046. Also reproduced in Bankruptcy Act Revision: Hearings Before the Subcommittee on Civil and Constitutional Rights of the Committee on the Judiciary, House of Representatives, 94th Cong., 1st and 2nd Sess., on H.R. 31 and H.R. 32, Supplemental Appendix, Part 1, Serial No. 27, p. 724.

. The conference committee minutes referred to in the above text were reported in 83 Cong. Record 9108 (June 13, 1938). The bill was enacted as amended by the conference committee. 11 U.S.C. § 861(11), 52 Stat. 923 (1938). The conference committee notes state:
The Senate, has, therefore, rewritten the provision, so that it will be clearly indicated that creditors for whom adequate protection has been provided, in the manner above set forth, are not to be counted in computing the required majorities for acceptance. In formulating this additional provision, further language has been added to make certain that creditors not affected for any other reason shall not be included in the computation. (Emphasis supplied).
See also, to same effect: Hearings on H.R. 8046 before the Senate Committee on the Judiciary, 75th Cong., 1st Sess., pp. 9, 131. Reproduced in Bankruptcy Act Revision: Hearings Before the Subcommittee on Civil and Constitutional Rights of the Committee on the Judiciary, House of Representatives, 94th Cong., 1st and 2nd Sess., on H.R. 31 and H.R. 32, Supplemental Appendix, Part 1, Serial No. 27, p. 826.
31. Majority of creditors necessary for acceptance of an arrangement—(clause (1) of sec. 408, p. 225).—This amendment makes a clarifying and conforming change. Clause (11) of section 461, page 225, provides adequate protection in the case of any class of creditors which does not accept by the requisite majority the proposed arrangement. As contained in the House bill, clause (1) makes no reference to this exception. Your committee has, therefore, rewritten the provision so that it will be clearly indicated that creditors for whom adequate protection has been provided, in the manner above set forth, are not to be counted in computing the required majorities for acceptance. In building up this additional provision, further language has been added to make certain that creditors not affected for any other reason shall not be included in the computation.

. The courts had installed the “absolute priority rule” as being inherent in the “fair and equitable” test. The “absolute priority rule” requires the stockholders’ interest in the property to be subordinated to the rights of creditors. Secured creditors get first priority according to their rank and the unsecured creditors follow. All members of a higher priority class must be paid in full before lower priority classes can be paid.
Prior to the 1952 amendments, even though the creditor had received the full value of the debt under § 461(11), at the confirmation hearing, and upon application of the “absolute priority rule,” the plan would not be confirmed by the court because the debtor retained an interest in the property without paying the full amount of the debt. This rendered § 461(11) virtually meaningless and unavailable to a debtor as Congress recognized in 1952. In 1952, Congress expressed its dissatisfaction with the judicial application of the “absolute priority rule” to Chapter X, XII, and XIII cases, and repealed the “fair and equitable” test and the inclusive “absolute priority rule” as being applicable to such “individual” types of rehabilitation chapters of the Bankruptcy Act. See § 366 Act Comment on 1952 Amendment, 1976 Collier Pamphlet Edition, Bankruptcy Act and Rules, at 467.

. Moreover, the cases cited by Acacia do not mandate a contrary result. Acacia offers the cases In re Burnt Hills Associates, 3 B.R. 384 (N.D.N.Y.1980), and In re Village I Apartments Associates, 3 B.R. 388 (N.D.N.Y.1980), as support for the position that a debtor’s plan of arrangement cannot be confirmed over the objection of the sole secured creditor. In both these cases, the courts were faced with the question whether a plan could be confirmed under § 461(11) of the Bankruptcy Act where the sole secured creditor opposed confirmation. After reading both cases, however, this court recognizes a principal distinction in those cases from the case at bar. In Burnt Hills Associates and Village I Apartments Associates the respective debtors were proposing to pay the secured creditors less than the amount of the value of their claims, which would have left the debtors in possession of the property free of the security interests held by the secured creditors. In the present case, however, the debtor is not attempting to remove the lien of the Secured Creditor. Nor is it proposing to pay the Secured Creditor less than the amount of its claim by appraising the property. From a reading of the Debtor’s amended plan, it appears that the Debtor is attempting to pay Acacia the full value of its claim as determined by Acacia’s own actions in negotiating a binding Contract of Sale to an unrelated third party:
The importance of the above distinction is further emphasized by the comments of the district court judge in both Village I Apartments Associates and Burnt Hills Associates:
Although In Re Stillbar Construction Co., obviously falls within the category of cases barring application of ‘cram-down’ where no secured creditors have accepted the plan, the Court notes that the reasoning in Stillbar is not actually much different from that in the cases in which ‘cram-down’ is allowed if adequate protection is provided the creditor. In finding that a Chapter XII Plan of Arrangement cannot be confirmed over the unanimous objection of the secured creditors, when the result would be payment to the secured creditors of less than the full amount of their debts and the debtor left in possession of its property free and clear, the Court, in effect, seems to be saying that under such circumstances, a finding of adequate protection simply could not be made.
In re Village I Apartments Associates, at 391 and In re Burnt Hills Associates, at 387.